BRAINERD *against* BRAINERD.

*A* being indebted to *B*, in the sum of 475 dollars, by note, *B* demanded security. For the sole purpose of security, it was agreed between them, that *A* should convey to *B*, by an absolute deed, a tract of land of the value of 800 dollars, and that *B* should reconvey the land to *A*, upon the payment of the debt, at any time within one year; and *B* was to give his bond to *A*, to secure the fulfilment of this stipulation. *A* executed his deed, as agreed, and left it in the hands of *C*, to be delivered to *B*, on his executing the bond for reconveyance. *B*, with the fraudulent intent to injure *A*, and to deprive him of his whole interest in the land, refused to execute the bond, and afterwards demanded of *A* an order upon *C* for the deed lodged with him, threatening him with a suit, if the order was not then given, and promising him, that if he would give it, *B*, on receiving the deed from *C*, would execute the bond. By reason of such threat and promise, *A* gave the order, and by means thereof, *B* obtained the deed, vesting in him an absolute title to the land, and then refused to execute the bond. *B* afterwards privately presented *A* with an agreement, drawn and ready for signature, and also notes for the amount of *A*'s indebtedness; and to induce *A* to execute these papers, *B*, fraudulently and with intent to cheat *A*, represented them to be all right, and the same in legal effect as the former agreement, whereas the new agreement was a mere promise by *B* to sell the land to *A*, on condition that he should pay the debt within one year. Under the influence of this representation, *A* signed the notes, and received from *B* the new agreement signed by him, and the old notes. *B* afterwards agreed to extend the time for the performance of the new agreement, one year, and on his failure to perform on his part, to pay *A* 50 dollars, as liquidated damages. Soon after the expiration of the extended time, *A* tendered to *B* the amount due to him, who received the money, but still refused to execute a

*Middlesex,*
July, 1843.

Brainerd
*v.*
Brainerd.

reconveyance of the land, and claimed it as his own, by virtue of said abso-lute deed. On a bill in chancery, brought by *A* against *B*, stating these facts, and seeking relief, it was held, that the bill substantially charged upon *B* a series of fraudulent pretences and practices upon *A*, by which *A* ultimately lost his land, though he had paid his debt; and that the bill was, therefore, sufficient to sustain a decree in favour of *A* ; especially, after the cause had been heard by a committee, without any demurrer or other objection to the sufficiency of the bill.

The facts stated in the bill being substantially found by the committee, the court decreed a reconveyance of the land by *B*, and payment of costs.

Parol evidence is admissible to prove, that a contract of mortgage has, by fraud, been converted into an absolute conveyance, and that what was really a loan, has thus been transformed into a sale.

THIS was a bill in chancery, stating the following case.

On the 3rd of *September*, 1839, *Seth Brainerd*, the plaintiff, was indebted to *Cornelius Brainerd*, the defendant, by three promissory notes, amounting, with interest to that time, to 475 dollars. The defendant demanded security for the payment of this sum, and declared, that if the plaintiff did not give him such security, he would harass him with suits, or otherwise put him to great inconvenience and expense. The plaintiff thereupon agreed with the defendant, that he would convey to him a tract of land, which the plaintiff owned, at *Candle-wood Hill*, in *Haddam*, containing 28 acres, and of the value of 800 dollars, by a good and sufficient deed, with the usual covenants of seisin and warranty ; and the defendant, on his part, agreed with the plaintiff, that he would reconvey the premises to the plaintiff, by a good and sufficient deed for that purpose, at any time within one year, upon the plaintiff's paying to the defendant, within that period, said sum of 475 dollars, with interest ; and that he, the defendant, would, at the time when the plaintiff's deed should be executed and delivered, execute and deliver to the plaintiff his, the defendant's bond, under his hand and seal, binding himself to reconvey the premises to the plaintiff as aforesaid. In pursuance of this agreement, a deed of the premises, convey-ing a perfect legal title, to be executed by the plaintiff, and a bond to be executed by the defendant, were, immediately afterwards, drawn, in due form of law, by *Charles C. Tyler,* Esq., of *Middletown ;* which deed the plaintiff then and there executed and acknowledged, and delivered to said *Tyler*, to be by him delivered to the defendant, when the defendant should execute said bond. Within a few days afterwards,

the plaintiff repeatedly requested the defendant to execute and deliver to the plaintiff said bond, according to his agreement; but the defendant, with a fraudulent intent to injure the plaintiff and deprive him of his whole interest in the premises, neglected and refused to execute said bond and deliver it to the plaintiff. Shortly afterwards, the defendant called upon the plaintiff, at *Haddam*, and demanded of him a written order on said *Tyler* to deliver said deed to him, the defendant, and threatened the plaintiff, that if he would not give the defendant such order, the plaintiff should pay him said debt, or he would sue the plaintiff forthwith, at the same time, falsely and fraudulently promising the plaintiff, that if he would give him such order, the defendant, on receiving said deed from said *Tyler*, would execute said bond. The plaintiff, placing implicit confidence in the defendant's promise, and moved by his threats and representations, gave him, on the 15th of *October*, 1839, an order in writing on said *Tyler* to deliver said deed to the defendant; which deed said *Tyler*, upon the presentment of the order, delivered to him. The plaintiff then demanded of the defendant a fulfillment of his contract, and that he should, pursuant thereto, execute and deliver said bond to the plaintiff; but he then, and has always since, neglected and refused so to do.

On the 25th of *October*, 1839, the defendant came to the plaintiff, at his dwelling-house in *Haddam*, and had a private interview with him, during which the defendant presented a new agreement in writing, signed by himself, and also two promissory notes, to be signed by the plaintiff, one dated the 13th of *September*, 1839, for the sum of 250 dollars, the other, dated the 20th of *October*, 1839, for the sum of 228 dollars, 77 cents, each payable to the defendant, on demand; which two sums amounted to said sum of money, and the interest thereon, then due, on the three notes before-mentioned; and the defendant, at the same time, proposed to the plaintiff, that he, the plaintiff, should sign and deliver to him, the defendant, said renewal notes of the 13th of *September* and the 20th of *October*, 1839, and the defendant would thereupon deliver up to the plaintiff said three notes, and would likewise deliver to the plaintiff said new agreement, so signed by the defendant. And the defendant then falsely and fraudulently, and for the purpose of cheating and defrauding the plaintiff, declared and

affirmed to him, that this was all right, and in substance the same thing, and having the same meaning in effect, as said bond, and that it would answer the same purpose. By the latter agreement, purporting to be made by and between the defendant of the first part, and the plaintiff of the second part, the defendant promised and agreed to sell to the plaintiff the land before-mentioned, upon condition that the plaintiff should pay therefor to the defendant the sum of 265 dollars, with interest thereon, within the term of one year from the date of said agreement; which last-mentioned sum of money was inserted in said agreement, in lieu of the aforesaid sum of 478 dollars, 77 cents, the amount of said two renewal notes. The defendant, at the same time, neglected and refused to execute said bond. By reason of such false and fraudulent representations of the defendant, and his refusal to execute said bond, the plaintiff, verily believing that said new agreement would, when executed and delivered, answer the same purpose as said bond, was induced, by the imposition, fraud, and undue influence of the defendant, to sign and deliver to him said renewal notes, and to receive from him said new agreement and the three notes before-mentioned. The defendant, on the same day, *viz.* the 25th of *October,* 1839, caused his deed aforesaid to be duly recorded in the records of the town of *Haddam.*

On the 25th of *August,* 1840, the defendant entered into an agreement with the plaintiff in writing, under his hand, of that date, promising the plaintiff to extend said new agreement one year from the date thereof, and to give the plaintiff one year longer time for the payment of said sum of money then due from the plaintiff to the defendant, on the renewal notes aforesaid; and for the non-performance of said agreement, he promised and agreed to pay to the plaintiff the sum of fifty dollars, as liquidated damages. The plaintiff afterwards, on the same day, paid to the defendant the sum of 265 dollars, which was in full payment of the sum of money mentioned in said new agreement, except the interest thereon, and likewise in full payment of said renewal note, dated the 13th of *September* 1839, for 250 dollars, and interest; and the defendant then delivered to the plaintiff said note, as being paid in full. On the 2nd of *September,* 1841, there was due from the plaintiff to the defendant the sum of 254 dollars and 39 cents, and no

more ; but the defendant then fraudulently and falsely claimed, that there was due from the plaintiff, instead thereof, the sum of 298 dollars.

*Middlesex*,
July, 1843.

Brainerd
*v.*
Brainerd.

The plaintiff being desirous to redeem said land, and obtain a reconveyance thereof, repeatedly applied to the defendant, prior to the 2nd of *September*, 1841, and offered to pay him all sums of money then due from the plaintiff to the defendant, and demanded a reconveyance of said land from the defendant ; but the defendant, with the fraudulent intention aforesaid, wholly refused to receive said sum of money, and to reconvey said land. And the plaintiff, on said 2nd of *September*, 1841, at *Haddam*, the usual place of abode of the defendant, tendered and left with the defendant said sum of 298 dollars, in full payment of all sums of money and the interest thereon then due from the plaintiff to the defendant, by reason of the premises. The defendant counted and received the money, being lawful coin, and appropriated it to his own use ; and has ever since kept and used it as his own property. The plaintiff afterwards demanded of the defendant said promissory note for 228 dollars, 77 cents, which the defendant delivered to the plaintiff. The plaintiff, at the same time, demanded of the defendant a good and sufficient deed of conveyance of said land, by a proper deed for such purpose ; but the defendant then, and has ever since, neglected and refused to reconvey said land to the plaintiff, or to vest in him a legal title thereto. By virtue of the aforesaid deed from the plaintiff, the defendant has a legal title to the premises ; but the plaintiff has the equitable title thereto ; and he is now ready, and willing, and desirous, as he claims he has done, to fulfill, on his part, said agreement with the defendant, and to receive from him a reconveyance of said land.

The bill averred, that all the said doings of the defendant were with a false, fraudulent and wicked design, and intention to deceive, defraud and injure the plaintiff, and deprive him of said land, and all his right, title and interest therein, contrary to equity and good conscience.

The prayer of the bill was, that the defendant should specifically perform said contract, and should execute and deliver to the plaintiff a good and sufficient deed of conveyance of said land, with the usual covenants of seisin and warran-

HARVARD LAW LIBRARY

*Middlesex,*
July, 1843.

Brainerd
*v.*
Brainerd.

ty ; or that the court would, by decree, transfer to the plaintiff the title in said land, in such manner as justice and equity might require ; or that the court would, in some other way, grant relief.

The bill was brought in *September*, 1841.  In *August*, 1842, the court appointed *Samuel Ingham* and *Charles J. McCurdy*, Esqrs., a committee to hear the parties and report the facts.  The committee made their report to the court, at its term in *February*, 1843, finding the principal facts alleged in the bill, with some variation in the detail of circumstances, but without finding in terms, that there was any fraudulent design on the part of the defendant.

On the hearing before the committee, in proof that the plaintiff caused the deed and bond to be drawn ; the deed to be left with said *Tyler*, on the 3rd of *September*, 1839 ; that the parties had the interview on the 25th of *October*, 1839 ; and in proof of the substitution of notes, and the delivery of the agreement, and the declaration of the defendant, at that time ; as stated in the bill and found by the committee, the plaintiff offered the testimony of witnesses ; which testimony was objected to, by the defendant, on the ground that it was parol evidence ; but it was admitted by the committee.

The case was reserved for the advice of this court on the question whether the report should be accepted, and as to what decree ought to be passed.

*Hungerford* and *Wightman*, for the plaintiff, contended, 1. That the facts stated in the bill entitled the plaintiff to relief in equity, on the ground of fraud and imposition.  It is a singularly hard case of that description.

2. That if otherwise, the plaintiff was entitled to relief on the ground that the transaction, as between the parties, was a mortgage.   In the first place, an absolute deed, intended as security for a debt, with a defeasance in a separate instrument, is a mortgage, as between the parties.  *Dey* v. *Dunham*, 2 *Johns. Ch. R.* 189.    S. C. 15 *Johns. R.* 555.   *Clark* v. *Henry*, 2 *Cowen* 324.   *Hicks* v. *Hicks*, 5 *Gill & Johns.* 76. Secondly, a deed, absolute on its face, intended as security for a debt, though registered as a deed, is a mortgage, as between the parties, although the defeasance is by parol.  *James* v. *Johnson*, 6 *Johns. Ch. R.* 417.   S. C. 2 *Cowen* 246.   *Anon.*

*Middlesex,*
July, 1843.

Brainerd
*v.*
Brainerd.

2 *Hayw.* 26. Thirdly, whether the particular transaction amounts to a mortgage, or a conditional sale, depends on all the circumstances of the case. *Robertson* v. *Campbell* & al. 2 *Call* 421. *King* v. *Newman*, 2 *Munf.* 40. *Prince* v. *Bearden*, 1 *A. K. Marsh.* 170. 2 *Eq. Dig.* 259. *pl.* 6. Fourthly, where the value of the land greatly exceeds the amount of consideration, and *a fortiori* where there is no consideration, unless for security, it constitutes strong evidence that the transaction was intended as a mortgage, and not a conditional conveyance. *Conway's* exrs. v. *Alexander*, 7 *Cranch* 218. *Oldham* v. *Halley*, 2 *J. J. Marsh.* 115. Fifthly, there being in this case a debt due from the plaintiff to the defendant, at the time the transaction took place, and still continuing, it furnishes conclusive evidence that it was a mortgage, and not a conditional sale. *Robinson* v. *Cropsey*, 2 *Edw. Ch. R.* 136. Sixthly, the position being established that this was once a mortgage, it must so continue. Once a mortgage, always a mortgage, is a familiar maxim in equity. *Clark* v. *Henry*, 2 *Cowen*, 324.

3. That the facts found by the committee are substantially the same as those alleged in the bill.

4. That the plaintiff will not be denied the relief to which he would be otherwise entitled, on account of any defect or inappropriateness in the prayer of the bill. If so many of the facts alleged are found by the committee as are sufficient to justify any decree in favour of the plaintiff, he is entitled to such decree, although it may not be the particular decree prayed for. *Crumbaugh* v. *Smock*, 1 *Blackf.* 305. *Wilkin* v. *Wilkin*, 1 *Johns. Ch. R.* 111. 117. *Beebe* v. *Bank of New-York*, 1 *Johns. R.* 529. 1 *Mitf. Plead.* 38.

5. That parol evidence was properly received, by the committee, for the purpose for which it was offered. At law, a party is not at liberty to show, by parol, that a deed, absolute upon its face, was intended as a mortgage. *Reading* v. *Weston*, 7 *Conn. R.* 144. 8 *Conn. R.* 117. *Benton* v. *Jones* & al. 8 *Conn. R.* 186. But in chancery, it is otherwise. *Marks* v. *Pell*, 1 *Johns. Ch. R.* 594. *Dey* v. *Dunham*, 2 *Johns. Ch. R.* 182. *James* v. *Johnson*, 6 *Johns. Ch. R.* 417. *Clark* v. *Henry*, 2 *Cowen*, 324. See also *Paterson* v. *Clark*, 5 *Johns. R.* 205. *Washburn* v. *Merrills*, 1 *Day* 139. 2 *Sw. Dig.* 164. 4 *Kent's Com.* 142 & seq. *Robinson* v. *Cropsey*,

2 *Edw. Ch. R.* 138. The report of the committee, therefore, should be accepted.

*Clark* and *Tyler*, for the defendant, contended, 1. That this was not the case of a *mortgage*, which the plaintiff had a right to redeem. In the first place, where there is a conveyance, by an absolute deed, with a separate contract for a reconveyance at a future period, on the payment of a certain sum—the resale being at the option of the grantor—this does not constitute a mortgage. *Robinson* v. *Cropsey*, 2 *Edw. Ch. R.* 138. *Goodman* v. *Gierson*, 2 *Ball & Beatty*, 274.

Secondly, the bill is not framed with a view to redeem the estate conveyed, but is founded altogether upon the contract, and seeks to compel a specific execution of that contract. The prayer is, that the plaintiff shall specifically perform said contract. There is no prayer for redemption. 2 *Sw. Dig.* 205. *Skinner* v. *Bailey*, 7 *Conn. R.* 500. *Shepard* v. *Shepard*, 6 *Conn. R.* 40. *Coop. Eq. Plead.* 5. 2 *Sw. Dig.* 203. The court will grant such relief only as will be in accordance with the bill. Lord *Walpole* v. Lord *Orford*, 3 *Ves.* jr. 402. 416. *Gaylord* v. *Couch*, 5 *Day* 230. *English* & al. v. *Foxall*, 2 *Peters R.* 612. *Dixon* v. *Parker*, 2 *Ves.* 220. 225. *Hobson* v. *McArthur*, 16 *Peters* 182. 2 *Madd. Chan.* 169. 171. *Coop. Eq. Plead.* 13, 14. Here, the question whether the deed was absolute or conditional, was not put in issue.

2. That the plaintiff is not entitled to relief on the ground of *mistake*. There is no allegation of mistake; and none is found. The agreement is what the parties *intended* it should be.

3. That the plaintiff is not entitled to relief on the ground of *fraud*. To make it a ground of relief, it must be directly alleged and found. Lord *Irnham* v. *Child* & al. 1 *Bro. Ch. Ca.* 94. *Pattison* v. *Hull*, 9 *Cowen* 755. *Governeur* v. *Elmendorf*, 5 *Johns. Ch. R.* 79. 82. *Chesterman* v. *Gardner*, 29. *Frost* v. *Beekman*, 1 *Johns. Ch. R.* 302. *Stewart* v. *Mechanics and Farmers Bank*, 19 *Johns. R.* 469. 1 *Sto. Eq.* 163. & seq. *Sug. Vend.* 92, 3. Now, in the first place, the allegations of the bill do not *necessarily* show fraud. Secondly, fraud cannot be *inferred*, unless the facts alleged and found necessarily imply it. It is never to be presumed. It cannot be made out, by mere argument, inference or conjec-

ture. *1 Sto. Eq.* 199. & n. 200. *1 Fonb. Eq.* 124. *Ches-*
*terfield* v. *Janssen,* 2 *Ves.* 156. *Weeden* v. *Hawes,* 10 *Conn.*
*R.* 50. *Seymour* v. *Hoadley,* 9 *Conn. R.* 418. *Clark* & al.
v. *White,* 12 *Peters* 178. 196. *Segur* v. *Tingley,* 11 *Conn.*
*R.* 134.

4. That this is not a case for a decree of specific perform-
ance. In the first place, the agreement was not performed,
on the part of the plaintiff; which is an essential element of
his claim. He performed neither the first agreement, nor the
second. The latter, which varies the former, extends it and
adds new terms, must govern. The tender was not within
the time prescribed by either agreement. Nor was there any
waiver of performance. *Hatch* v. *Cobb,* 4 *Johns. Ch. R.*
559. *Benedict* v. *Lynch,* 1 *Johns. Ch. R.* 370. *Lloyd* v.
*Collett,* 4 *Bro. Ch. Ca.* 469. *Kempshall* v. *Stone,* 5 *Johns.*
*Ch. R.* 193. *Avery* v. *Kellogg,* 11 *Conn. R.* 562. *Newl.*
*Cont.* 242. 1 *Madd. Chan.* 419. 414. 416. 2 *Sto. Eq.* 81.
85. & n. 1 *Fonb. Eq.* 391, 2.

Secondly, the parties have agreed upon their own measure
of damages, in case of non-performance of the agreement;
and the defendant has an option to pay those damages, or con-
vey the land. The court, therefore, will not deprive him of
that option, by enforcing a specific performance. 2 *Sto. Eq.*
550. 1 *Fonb. Eq.* 151, 2, 3. n. (*d*) 1 *Mad. Chan.* 37. 39.
*Low* v. *Peers,* 4 *Burr.* 2228, 9. *Newl. Cont.* 312, 13. 1 *Sw.*
*Dig.* 681.

5. That the parol evidence offered by the plaintiff, on the
hearing before the committee, and objected to by the defend-
ant, was improperly admitted. There is no case where a
court of equity has admitted parol proof to convert an abso-
lute deed into a mortgage, or to vary the import of a written
instrument, except on the ground of fraud or mistake. *Wash-*
*burn* v. *Merrills,* 1 *Day* 139. 2 *Sw. Dig.* 95, 6. *Pow. Mort.*
200. *Strong* & al. v. *Stewart,* 4 *Johns. Ch. R.* 167. *James*
v. *Johnson* & al. 6 *Johns. Ch. R.* 417. *Dixon* v. *Parker,* 2
*Ves.* 225. *Marks* v. *Pell,* 1 *Johns. Ch. R.* 594. 2 *Sto. Eq.*
286. 4 *Kent's Com.* 136. It has already been shown, that
the plaintiff is not entitled to relief on either of the grounds
embraced by the exception.

CHURCH, J.   We have had doubts whether this bill could be sustained.   We are sure that, unless fraud or mistake are sufficiently alleged, there are no other facts set up in it, which are sufficient to sustain it.   Upon the whole, a majority of the court believe the bill to be sufficient.

The plaintiff states his indebtedness to the defendant, and the defendant's demand of security from him ; and for the sole purpose of security, and with no other intention by either party, it was agreed between them, that the plaintiff should convey, by an absolute deed, the premises in question to the defendant, and that the defendant should reconvey them, upon the payment of the debt, at any time within one year ; and that he would execute and deliver to the plaintiff his bond for such reconveyance.   This was essentially an agreement to execute a mortgage, and nothing else.   It is also alleged, that the plaintiff executed his deed, as agreed, and left it in the hands of *Charles C. Tyler*, Esq., to be delivered to the defendant, upon his executing the bond for reconveyance ; that the defendant, with the fraudulent intent to injure the plaintiff and to deprive him of his whole interest in the premises, refused and neglected to execute the bond ; that afterwards, the defendant demanded of the plaintiff an order upon said *Tyler* for the deed lodged with him, and threatened a suit, if the order was not then given ; that to induce the plaintiff to give the order, he fraudulently and falsely promised the plaintiff, if he would give the order demanded, he would, on receiving the deed from *Tyler*, execute the bond for reconveyance, as before agreed ; that by reason of this threat and these representations, the plaintiff gave the order, by means of which, the defendant obtained an absolute deed, instead of the mortgage agreed upon by the parties ; and that the defendant then refused to execute the bond.   Here, as we think, an essential fraud is alleged, by means of which the relation of these parties was entirely changed, and the plaintiff, instead of mortgaging his property to the defendant, had sold it without the power of redemption.

Again, it is alleged, that afterwards, the defendant privately presented to the plaintiff an agreement *already drawn up* and ready for signature, and also notes for the amount of said indebtedness ; that to induce the plaintiff to execute these papers, the defendant fraudulently and with intent to cheat

the plaintiff, represented them to be all right, and the same in legal effect as the former agreement; whereas said new agreement was nothing more than a promise by the defendant to sell the aforesaid premises to the plaintiff, upon condition that the plaintiff should pay said debt within one year; that afterwards the defendant agreed to extend the time for the performance of the new agreement, and on his failure to comply, to pay to the plaintiff fifty dollars, as *liquidated damages;* and last of all, that soon after the expiration of the extended time of performance, the plaintiff tendered to the defendant the amount due to him, who received the money, but still refused to execute a reconveyance of the land, and now claims it as his own, by virtue of said absolute deed, thus fraudulently obtained from *Tyler.*

*Middlesex,*
July, 1843.

Brainerd
*v.*
Brainerd.

Now, although the charges and allegations of fraud in this bill are not made with usual professional clearness and technical precision, and which, certainly, is at all times desirable, so that the court, as well as the defendant, may apprehend the exact charge to be proved or repelled, and how the fraud charged affects the material facts set forth in the bill; yet the same certainty of allegation, so far as the form of averment is concerned, is not generally as much insisted upon in courts of equity, as in pleadings at common law. By a fair and rational construction of the language employed in this bill, we cannot but see, that the plaintiff has substantially charged a series of fraudulent pretences and practices upon the defendant, by which the plaintiff has ultimately lost his land, though he has paid his debt. We think, therefore, that in this respect, the bill is sufficient; and we should feel very reluctant, at this stage of the proceedings, and after the cause has progressed so far as to be heard now upon a report of committee, without any demurrer or other objection to the sufficiency of the bill, to turn the plaintiff back to commence his proceedings *de novo. Morris* v. *Nixon's* executors, 1 *Howard,* 118.

The committee have found the facts very nearly as alleged in the bill: and such as were not proved, by written documents, were found upon parol proof, which was objected to by the defendant. And a material question for our consideration upon the report, is, whether such evidence was legally admitted?

HARVARD LAW LIBRARY

*Middlesex,*
*July, 1843.*

Brainerd
*v.*
Brainerd.

That parol evidence is inadmissible to contradict or explain a written instrument, is a principle so entirely settled, as no longer to be the subject of discussion. And we know of no case of good authority, which recognizes any distinction, in the application of this principle, in the different courts of law and equity. 2 *Story's Eq.* 76. 746. *Croome* v. *Lediard*, 2 *Mylne & Keene* 251. And therefore it is, that it has been repeatedly holden, in this state, that an absolute deed cannot be shown, by parol evidence, to be in fact conditional. *Reading* v. *Weston,* 8 *Conn. R.* 117. *Benton* v. *Jones, Id.* 186. It is true, in many cases like the present, where the contract was intended to be, and was really, conditional, but has been made, by the fraud of the party, or by mistake of a scrivener, or other mistake or accident, to assume the legal appearance of an absolute one, that such fraud, mistake or accident may be proved by parol; for in no other way can fraud, &c., be proved. *Morris* v. The executors of *Nixon,* 1 *Howard,* 118. And because frauds, &c., are more frequently the subjects of enquiry in courts of equity than at law, it has been sometimes supposed, that different rules of evidence on this subject prevail in the different jurisdictions. *Washburn* v. *Merrills,* 1 *Day* 139. *Dean* v. *Dean,* 6 *Conn. R.* 285. *Strong* & al. v. *Stewart,* 4 *Johns. Ch. R.* 167. *Leman* v. *Whitley,* 4 *Russell* 423.

In the state of *New-York* the courts have admitted parol evidence, both at law and in equity, to show an absolute deed to be a mortgage. *Roach* v. *Cosine,* 9 *Wend.* 227. *Walton* v. *Cronley's* admr. 14 *Wend.* 63. *Slee* v. *The Manhattan Co.* 1 *Paige's Ch. R.* 48. *Swart* & al. v. *Service,* 21 *Wend.* 37. But from the remarks of the court, in this latter case, as well of the majority, as of the dissenting judge, we believe, that this practice, when applied to cases where neither fraud, accident nor mistake was to be proved, has not been entirely satisfactory to the tribunals of that state; and has been adopted from some supposed necessity or policy, which we can neither discover nor appreciate. *Ring* & al. v. *Franklin,* 2 *Hall* 1. *Birbeck* v. *Tucker* & al. 2 *Hall* 121.

But however this may be, the courts of this state, and, we believe, of all our sister states, agree in receiving parol evidence to prove, that by fraud a contract of mortgage has been converted into an absolute conveyance, and that what

was really a loan, has been transformed into a sale ; and upon such evidence have granted adequate relief. Such a case a majority of us believe to be sufficiently stated in this plaintiff's bill ; and of course, that the committee properly admitted parol evidence to support it. *Washburn* v. *Merills*, 1 *Day* 139. *Dean* v. *Dean*, 6 *Conn. R.* 285. *Strong* & al. v. *Stewart*, 4 *Johns. Ch. R.* 167. *Clark* v. *Henry*, 6 *Johns. Ch. R.* 324. *Dunham* v. *Dey*, 15 *Johns. R.* 555. 1 *Howard*, 118.

As it appears from the report of the committee, that the sole consideration of the plaintiff's deed to the defendant, was the debt due by the former to the latter ; and that this debt has been paid and satisfied, and that the defendant now holds the land only for the plaintiff ; he ought to be ordered to reconvey it, as well as to pay the costs of this proceeding ; and so we shall advise the superior court.

In this opinion the other Judges concurred, except Williams, Ch. J., who, if he did not explicitly dissent, hesitated to give his assent.

Decree for plaintiff.