French *v.* Burns.

————◆◆◆————

<table>
<tr><td>35</td><td>359</td></tr>
<tr><td>59</td><td>179</td></tr>
<tr><td>35</td><td>359</td></tr>
<tr><td>74</td><td>255</td></tr>
</table>

JONAS G. FRENCH *vs.* SAMUEL S. BURNS AND OTHERS.

A conveyance absolute on its face, if in fact taken as security, constitutes in equity a mortgage.

The respondent to a bill to redeem had taken a conveyance of the premises from a grantee who held by a deed absolute on its face, but in fact given as security. He had notice at the time of a claim on the part of the petitioner that the deed was intended only as security, but relied upon the assurance of his grantor that the petitioner's right of redemption had expired and that he had no further claim on the property. After the respondent had made valuable improvements on the property the petitioner brought a bill to redeem. It appeared that the petitioner had held the property for sale. Held, that in the circumstances it would be a hardship to compel the respondent to lose the value of the improvements, if they could be saved to him without wrong to the petitioner—and that full justice could be done to the latter by the payment to him by the respondent of the difference between the amount of the encumbrances and the actual value of the premises; and that a decree should be passed allowing him to redeem unless the respondent within a time fixed should make such payment.

BILL TO REDEEM mortgaged premises, brought to the Superior Court in New Haven County. The following facts were found by the court.

On the 21st of January, 1860, the petitioner was the owner of the property in question, consisting of a dwelling house

and land, subject to two mortgages, one of $500 and one of $1,400, and on that day executed and delivered to the respondent, Burns, a quit-claim deed of the property. At this time the petitioner was engaged in the business of teaching a boy's boarding school, at his dwelling house on the premises, and being in want of funds to repair and enlarge the house, he made a parol agreement with Burns, who was a dealer in lumber, that the latter should furnish materials and money for such repairs and enlargement, and as security therefor should take said quit-claim deed, and as soon as the amount of materials and money necessary for such repairs and enlargement could be ascertained, a bond should be given by Burns to the petitioner, conditioned for the reconveyance of the property on the payment of the amount with interest. Under this agreement money and materials to the amount of $683.-62 were furnished by Burns to the petitioner, and on the 6th of August, 1860, after the execution of the quit-claim deed, a bond was executed by Burns and delivered to the petitioner, of which the following was the condition:—"The condition of the above bond is such, that whereas the above named Jonas G. French, on the 21st day of January, 1860, executed and conveyed to the said Samuel L. Burns, a certain lot of land situated in said Milford, for the sum of $683.62, containing one acre (more or less), with all the buildings thereon standing, bounded as follows: northerly on highway, east and south on stream and harbor, west on Sylvanus Dickinson's heirs: Now therefore if the said French shall well and truly pay, or cause to be paid, to the said Burns, his heirs, &c., the sum of six hundred eighty-three $\frac{62}{100}$ dollars, with the interest, at the expiration of one year from the 21st day of January, 1860, then and in such case it is understood and agreed that the said Burns is to execute and convey back to the said French, his heirs or assigns, the above named and described premises, when and then the above bond will be null and void.

SAMUEL L. BURNS."

At the expiration of the year mentioned in the condition of the bond, the petitioner had informed Burns that he might be unable to get the money, and Burns expressed his satisfaction

with the security, and said he was willing the transaction should remain as it was ; and it did so remain until after the fall of 1861, when the petitioner met with a personal injury, which deprived him of the ability to carry on his business. In the spring of 1862, while the petitioner was unable to attend to his business, it was agreed between him and Burns, by parol, that the place should be rented, and the rent applied to keep down the interest, and the balance be paid to the petitioner ; and the parties agreed that another bond, substantially like the one before mentioned, but giving further time to pay the amount of Burns' advancements, should be executed by Burns; and a bond for that purpose was drawn up by the petitioner, which Burns took for the purpose of examining, to see if it was correct, but it was never executed. In March 1862, the property was leased by parol to Joseph W. Fisher, one of the respondents, at a rent of two hundred dollars per annum, and the petitioner left, and Fisher took possession of the premises as the tenant of Burns and under an understanding between all parties that the rent was to be paid to Burns, and by the petitioner and Burns it was agreed that it should be applied to keep down the interest, and the balance be paid to the petitioner. And it was at this time further arranged between the parties that, as it might become necessary to sell the property to pay off the incumbrances, the petitioner and Burns might either of them make sale on giving the other party thirty days previous notice, to enable him to sell to better advantage. While Fisher was treating for the lease of the premises both French and Burns had offered to sell the property to him, and the price at which Burns offered it was at that time $3000, but whether French knew of the terms of this offer was not found. In March, 1863, there was conversation between Burns and the petitioner, in respect to the payment by the petitioner of the claims of Burns, and Burns said that the rent paid the interest, and the petitioner could have all the time that Fisher rented to pay in. In July, 1863, the petitioner informed Burns that he had a prospect of redeeming the property, and requested him

to compute the interest, and told him on the 30th of July that he could have his money the next day. Burns at this time had taken up the prior mortgages on the property, and claimed the sum of three thousand dollars for a deed, and refused to arrange a settlement upon the basis of the amount due upon all the incumbrances upon the property; and at this time Burns first determined to hold the property as his own, and to deny that the petitioner had any interest or equity therein, and claiming the property as his own he contracted to sell the same to the respondent Fisher, or his wife, for the sum of three thousand dollars, and on the 8th day of August thereafter, did convey the same to Sarah W. Fisher, the wife of said Joseph W. Fisher. On the 31st of July, the day after the petitioner told Burns that he could have his money the next day, the petitioner went with a Mr. Griswold of New York, with money sufficient to pay up the whole of Burns's claims upon the property, and with the intention to pay the same, or to make tender of payment to him, at Mr. Burns's place of business, but they could not find him. Burns, having reason to believe that they were coming to him for that purpose, intentionally avoided being seen by them on that day. Mrs. Fisher and her husband, at and previous to the time she took her deed of Burns, had notice that the petitioner claimed an interest in the property, and a right to redeem, and that the interest which Burns took by his quitclaim deed, though the deed was absolute in terms, was intended only as security for certain advancements made by Burns to the petitioner. On the 26th of September, 1863, the petitioner again went to Burns's place of business and informed him that he had come to pay what he owed him and to get a deed of the property, and Burns then informed him that he had sold the place. The property is now of the value of $5,000, but its value has been considerably increased by the improvements made by Mr. Fisher since the conveyance to his wife. At the time of the conveyance it was of the value of $3,700. Mr. Fisher acted as the agent of his wife in making the purchase, and at the time of the purchase Burns informed Fisher that French had had a year to

redeem the property in, and that he had not redeemed it, and that he then had no claim to it, but that he, Burns, had the right to sell it.  The petitioner paid no interest, and most, if not all, the taxes accruing after Burns took his deed, were paid by him.

Upon these facts the case was reserved for the advice of this court.

*C. Ives* and *Alling*, for the petitioner.

*D. B. Beach* and *Doolittle*, for the respondents.

HINMAN, C. J.  We have no doubt that the deed of the 20th of January 1860, from the petitioner to the respondent, Burns, though absolute on the face of it, yet, taken in connection with the parol agreement under which it was executed, and the bond subsequently executed by Burns to French pursuant to that agreement, constituted a mortgage for the security of the advancements both in money and material then and subsequently made by Burns to French.  Cases of this sort are very numerous in our own reports and elsewhere, and the rules applicable to them are so well settled as to require but little to be said in respect to them.  The rule that an absolute deed, if intended as a security for a debt, is to be regarded as a mortgage, is too well known to require the citation of authorities in support of it.   It is sufficient to say that this court has acted upon it in the recent cases of *Brainerd* v. *Brainerd*, 15 Conn., 575, *Jarvis* v. *Woodruff*, 22 Conn., 548, and *Mills* v. *Mills*, 26 Conn., 213, and the principle was fully discussed and applied by the Supreme Court of the United States in *Russell* v. *Southard*, 12 How., 139.

This deed, then, having been originally given as security for a debt, was at the time a mortgage; and nothing has occurred between the parties to it to change its character. It therefore still retains its original character; and the maxim, "once a mortgage always a mortgage," applies to it.  And in this case there is no necessity for resorting to parol evidence to show its character, since the parol agreement made at the execution of the deed was subsequently carried into

effect by the execution of the bond by Burns in pursuance of that agreement. Nor have we any doubt that Mrs. Fisher, who took her deed after she had notice that the petitioner claimed an interest in the property and a right to redeem the same, and that the interest which her grantor took by his deed was intended only as security for advancements made by him, must be held to have taken her deed of the property charged with the same equities in favor of the petitioner that it was charged with in the hands of her grantor.

Upon this view of the case, it would seem that the proper decree would be such as the petitioner requests—merely to authorize him to redeem upon his paying up the incumbrances upon the property. But under the circumstances of the case this would be a hardship to Mrs. Fisher, in depriving her of all benefit arising from the valuable improvements she has made upon the property; and would also enable the petitioner to obtain the benefit of those improvements without paying any thing for them. We have therefore examined the case with care, in order to come to a result that will, we think, do more exact justice to the parties. It was correctly said in argument that a mortgagee in possession has no right without consent of the mortgagor to further charge the property with unnecessary improvements, thus making it more onerous for him to redeem. And it was claimed that the notice to Mrs. Fisher before her purchase subjected her to the charge of acting in fraud of the petitioner's rights. In a certain legal sense this may be so, since she undoubtedly had such notice as to put her upon enquiry, and therefore subjected her to such notice as by the proper enquiry she might have acquired. Still there is nothing in the finding to show that she did make enquiry, or that she or her husband as her agent were guilty of any moral fraud. They undoubtedly trusted too confidingly to the assurances of title made by their grantor, Burns, and relied too much upon the security arising from his deed of warranty; but as there was no moral obliquity either in her or her agent, and as they undoubtedly thought they had a perfect title, we do not think they ought

to be subjected to the loss of the improvements made by them, if they can be protected in them without doing injustice to the petitioner.   And in this case we think this can be done. It was said, indeed, by the petitioner's counsel that the property in dispute was the petitioner's homestead and mansion house, and that he desired to retain it as such.  But the finding shows that at the time Fisher took possession he was endeavoring to sell it ; and at the time he demanded the title of Burns, and offered to pay up the incumbrances in order to obtain it, he only wanted it for the purpose, as we understand, of immediately passing over the title to another party to whom he had bargained to sell it, for a price larger than Fisher had agreed to give for it.   If then he is paid all that the property would have brought him at the time he demanded the title, he will be placed in the same condition that he would have been had Burns then transferred the title to him, and this, while it will do exact justice to him, will work no unnecessary hardship to Mrs. Fisher by depriving her of the benefit arising from her improvements upon the property. And under the circumstances of the case, exact justice to all parties can be done in no other mode.

We have therefore come to the conclusion to advise the Superior Court that the original deed to Burns conveyed only a mortgage interest in the property ; and  that that is the interest now held by Mrs. Fisher ; and that the petitioner be permitted to redeem the premises by paying up the incumbrances, unless the respondents, or some of them, within such time as the court shall limit for that purpose, pay to the petitioner the difference between the sum of thirty-seven hundred dollars, the value of the property at the time a reconveyance of it was demanded, and the amount of the incumbrances then upon the property, with the interest on such balance ; and that the respondents also pay the petitioner his costs.

In this opinion the other judges concurred.