# Cases

# FIRST DEPARTMENT,

AT

# GENERAL TERM,

## October, 1886.

---

GEORGE HENRY WARREN, Respondent, *v.* ROWLAND M. HALL and Others, Appellants.

*Action for the specific performance of a contract to convey lands — admissibility of evidence to show that it would be inequitable and unjust to grant the relief sought.*

In this action, brought to compel the specific performance of a contract by which the defendants agreed to convey to the plaintiff certain lands in the city of Newport, by a deed containing a general warranty and the usual covenants for the conveying and assuring to him of the fee simple of the premises, free from all incumbrance, a judgment was entered directing compensation to be made to the plaintiff on account of an easement of maintaining a sewer through the lands, and of entering upon the said lands to repair and maintain the sewer, which existed in favor of the city, and that a conveyance of the land subject to this easement be made to him.

Upon the trial of the action the defendants offered, but were not allowed, to prove that the plaintiff knew that the sewer ran through the property prior to the execution of the contract, and that the contract itself was prepared by the plaintiff's attorney, who had searched the title and knew of the existence of the sewer. *Held,* that it was error to refuse to admit the evidence. (Macomber, J., dissenting.) *Riggs* v. *Pursell* (74 N. Y., 370) distinguished.

Appeal from a judgment, entered on the trial of this action at the New York Special Term.

*Wheeler H. Peckham,* for the appellants.

*George G. De Witt, Jr.,* for the respondent.

Daniels, J.:

The contract, for the specific performance of which this action was brought, by its language, obligated the defendants to convey to the plaintiff the property referred to in it, by a deed containing a general warranty and the usual covenants for the conveying and assuring to him the fee simple of the premises, free from all incumbrance. Before the time when it was made, and also when it was to be carried into effect, a sewer had been laid through a portion of the premises, which the city of Newport had the right to maintain and keep in repair, and for that defect in the title the plaintiff was allowed compensation by the judgment which, in addition to decreeing its payment, directed a conveyance to him of the premises.

Upon the trial of the action the defendants proposed to prove the plaintiff's knowledge that the sewer ran through this property prior to the execution of this contract, and to follow it up by showing that the contract itself was prepared by his attorney, who had searched the title and knew of the existence of the sewer. This was objected to by the plaintiff's counsel and excluded by the court, and to that ruling the defendants' counsel excepted. No objection was taken to the insufficiency of the offer in any respect, but the only objection previously made to that description of proof was, that the preceding conversations and negotiations had become merged in the written agreement, and it was probably in that view that this evidence was excluded by the court. But as this action was for the specific performance of the agreement, the defendants had the right to prove any facts within the issue, rendering the claim by the plaintiff for compensation an inequitable one. For the rule is well settled in actions of this description, where the claim made for relief is unfair, inequitable or unjust, that the court will not decree a specific performance which may be attended with that effect. If this evidence had been received, and it is to be assumed for the present disposition of the case that the defendants could have proved their offer, then it would have established the fact that the plaintiff and his attorney, understanding the existence of this sewer in the property, and that it was the purpose of the defendants to convey it in the condition in which it was, prepared the contract and obtained its execution in such form as to impose the obligation by

its language upon the defendants, to convey the premises in the
same manner as though the sewer itself had no existence.   And that
would result in taking an unfair advantage of the defendants, if in
fact the plaintiff and his attorney were aware of the existence of the
sewer.   It would be an imposition upon the defendants to prepare
and obtain the contract as they did, without apprising them of the
fact that it had been so drawn as to obligate them to convey the
property free from the incumbrance of the easement.   It would
likewise be of the same character, if the understanding between the
parties was that the plaintiff should receive the conveyance of the
property, subject to this servitude.   In either case the transaction
would appear not to have been fairly conducted.   For if the plaintiff
and his attorney knew of the existence of the sewer in the land, that
knowledge required that some explanation or provision for the pro-
tection of the rights and obligations of the parties growing out of
it should have been given place in the agreement.   That was not
done, but the contract was taken from the defendants without
any reference whatever being made to this sewer, or to the
formal obligation declared by the contract to protect the plaintiff
against it.

It may be that the conduct of the plaintiff and his attorney was
entirely free from all criticism, and that it will be so made to appear
upon a further consideration of the case.   But as it has now been
presented that cannot be assumed, but the court is required to infer
from the offer, that knowing of the existence of the sewer, the
attorney or counsel for the plaintiff prepared the contract without
any reference to it, or exception made concerning it, binding the
defendants to execute and deliver such a deed as they were incapable
of giving because of the existence of the sewer.

In actions for the specific performance of contracts for the con-
veyance of real estate, it has been the constant practice of courts
of equity to receive proof establishing the fact that the decree
applied for would be unjust or inequitable, by reason of any material
mistake, misapprehension or imposition upon the party proceeded
against.   (3 Greenl. on Ev. [15th ed.], § 361.)

It has been urged, in support of the ruling made at the trial, that
if the proof had been received as it was offered, it would not have
shown such knowledge on the part of the plaintiff or his attorney

as would charge either with information as to the legality of the easement itself; and the case of *Riggs* v. *Pursell* (74 N. Y., 370) has been cited as an authority sustaining this position. But that case very materially differs from this in its principle. There the only fact subject to observation indicating any restriction upon the right of the owner to use and improve the property, was the manner in which the building itself had been erected. And from that it could not naturally have been inferred that it was in this condition by reason of any legal restriction upon the right of the owner. While if the plaintiff was aware of the fact that the sewer existed in and passed through this property, and his attorney had discovered it in searching the title, it might be inferred that it was there by some right existing on the part of the city to place and maintain it there. Certainly the offer was not so deficient in this respect as to justify the court in excluding the evidence for any reason of this character. Neither could it be excluded under the rule rejecting oral evidence offered to explain, qualify or add to a written instrument. For while it is true that this rule is observed in courts of equity as it is in courts of law (*Hunt* v. *Rousmanier*, 8 Wheat., 174, 211; *Brainerd* v. *Brainerd*, 15 Conn., 575, 585; 3 Greenl. on Ev. [15th ed.], § 366), the courts have in actions for the specific performance of contracts allowed the parties resisting the suit to prove, by oral evidence, that the contract had been entered into by mistake, or that an unfair or improper advantage had been taken by the plaintiff in obtaining it, as facts proper to be considered, to influence the discretion of the court and qualify the right to relief. This evidence, under the principle already mentioned, should have been received. But it was not. Neither was any evidence afterwards received upon the trial equivalent to this rejected offer of proof.

If the facts had been proved they would have been entitled to the consideration of the court upon the right of the plaintiff to the compensation allowed by the judgment for the existence of this sewer. And because of the exclusion of the evidence the judgment should be reversed and a new trial ordered, with costs to abide the event.

BRADY, P. J. :

I think the evidence offered, and particularly referred to by Justice DANIELS, should have been received. I concur, therefore.

MACOMBER, J. (dissenting):

This is an appeal from a judgment of the Special Term, by which a specific performance of a contract was awarded to the vendee of a land contract, with an abatement from the purchase-price on the ground that the title of the vendor was not of the character that he agreed to convey by the written contract.

By the contract, which bears date the 7th day of July, 1881, the defendants, excepting Blagden, in consideration of the sum of $9,000, payable as therein mentioned, agreed to sell to the plaintiff certain lands situated in the city of Newport, in the State of Rhode Island, bounded southerly on Ward avenue, westerly on the land of John A. Hazard, northerly on the land of John A. Hazard and land of the heirs or devisees of Robert H. Ives, and easterly on the Annandale road, and execute and deliver therefor a proper deed containing a general warranty and the usual full covenants for the conveying and assuring to the plaintiff the fee simple of the premises, free from all incumbrance. The purchase-money, excepting the sum of $100, which had been paid at the time of making the land contract, was to be paid on the twenty-seventh day of July, and the deed then delivered. On the day for the payment of the money and the delivery of the deed, a conveyance was tendered to the plaintiff in all respects conforming to the contract, except that the premises were made subject always to the rights relative to a drain or sewer in and through said land granted by deeds to the city of Newport. Discovering this reservation of rights in the city of Newport, the plaintiff refused to receive the deed and to pay the unpaid purchase-price, claiming that the deed was not in accordance with the contract. The rights so referred to in the deed are shown by the deed itself to the city of Newport to be such as give the authorities of the city of Newport at all times the right to maintain the ditch as a public sewer and to enter upon the whole premises at any time to make repairs, etc.

Negotiations were had between the parties for sometime designed for their object to get the city of Newport to release or surrender its rights in respect to this sewer, but they came to naught, save only that the city, by its proper authorities, consented to use only a portion of the land over and along each side of the sewer for the purposes of entering and making repairs.

The trial court granted to the plaintiff specific performance with a deduction of $985.62, in which sum it was found the premises were less valuable by reason of the servitude previously granted to the city of Newport.

It is urged by the learned counsel for the appellants that the easement to the city of Newport is not one of those incumbrances or defects of title which will enable a court of equity to grant a specific performance of a contract with compensation for the servitude. We have, however, a very careful statement of the rule, as laid down by Pomeroy in his work on Specific Performance of Contracts (§ 440), as follows: " The existence of easements upon the land in favor of third persons, or of other similar rights which conflict with those of the owner, and which would prevent a vendor from forcing an acceptance upon an unwilling vendee, will entitle the purchaser, at his election, to insist upon a conveyance of the land subject to these rights, with such compensation or abatement from the price as shall be proportionate to the diminution in the value of the subject-matter."

See, also, the case of *Riggs* v. *Pursell* (66 N. Y., 193), where the court assumed that a purchaser would not be compelled to take a title affected by an easement which was detrimental to the premises.

Neither Pomeroy nor counsel cite us to any case where the servitude, for which compensation has been sought, existed as a right of a municipal corporation for the purpose of drainage, though there are many cases alluded to bearing generally upon the question of making compensation such, for instance, as where the land is found to be subject to the right of a third person to dig minerals or ores, or subject to an outstanding right of dower in a widow. It is also urged by counsel that the doctrine can be applied only to cases where compensation may be made directly and by computation. It is true most of the cases in the books are of that description, a familiar instance of which is where the vendor in a land contract is unable by his deed to convey the number of acres which he has agreed to convey by the contract, and which the vendee supposed he would get by the deed. But it does not seem to me that the fact that the subject-matter of inquiry is difficult renders the court unable to do justice between the parties.

It is further claimed that in this case the court has attempted to

make a contract between the parties which neither of them contemplated at the time they signed the written agreement. This could be urged with equal force in any case, however simple it might be, where it was found that one of the contracting parties was not able to perform fully and the other desired performance *pro tanto.* The judgment of the court in such cases, where the parties do not make a new agreement among themselves, is to enforce the agreement as nearly as it may be. The defendants ought not to be permitted to complain of the fact that they have deliberately, by a written agreement, undertaken to convey more than they had, and should, therefore, be relieved entirely of the obligation which they had assumed, and the plaintiff lose thereby his right and privilege of making a good bargain. But a sufficient answer may be found in the language of Lord ELDON, in the case of *Mortlock* v. *Buller* (10 Ves., 315), where it is said: " If a man having partial interests in an estate chooses to enter into a contract, representing it and agreeing to sell it as his own, it is not competent for him afterwards to say, though he has valuable interests, he has not the entirety, and, therefore, the purchaser shall not have the benefit of his contract. For the purpose of this jurisdiction, the person contracting under those circumstances is bound by the assertion in his contract; and if the vendee chooses to take as much as he can have, he has a right to that and to an abatement, and the court will not hear the objections by the vendor that the purchaser cannot have the whole."

Nor is the amount of the compensation made to the plaintiff an arbitrary sum. The trial court accepted apparently the lowest estimate of damages made by any witness. The subject-matter of this estimate was not speculative in any sense. The property consists of certain well defined lots of land as shown in the map printed in the case, with a blind sewer running within about forty feet of one of the lines, upon which the authorities of the city of Newport have the right to enter at any time to enlarge, cleanse and repair for public purposes. Any person, therefore, acquainted with the land, and knowing well what uses it might be put to except for the sewer in that location, could easily estimate the diminished value of the property for any use to which it might be put by reason of the servitude. The estimates of the several witnesses of such damages

are as nearly alike as we are accustomed to see in the trial of law cases where damages are to be estimated in other ways than by a mathematical computation. In arriving at the result, each witness necessarily took into the account any possible benefit, if benefit there were, to the land, by having its drainage thus provided for at public expense. Hence it is that the argument of counsel does not appear to be sound in urging that there could be no compensation because there were certain benefits accruing to the land by the existence of the drain.

No compensation could be awarded the plaintiff, together with a specific performance, if he had knowledge or notice of the existence of the servitude before making the contract. Hence it is with some embarrassment that we notice that the trial court excluded the evidence of the witness Ford, which was apparently offered to show that the plaintiff knew of the existence of the sewer at that time. This evidence should have been admitted, but we are not prepared to say it was such an error to exclude it as to warrant us in reversing the judgment. The knowledge of the plaintiff, however, or notice to him which was thus sought to be given, was only of the physical existence of a drain or sewer upon the premises. No witness was adduced who testified or who could testify that the plaintiff had any notice or knowledge of the existence of the easement or servitude by the deed of the defendants, which had been theretofore executed. On the contrary, it affirmatively and conclusively appears that he had no such knowledge or notice. What, then, could have been the full significance that might be given to the excluded testimony? Was it anything more than the knowledge that a person would get of any land by examination of it? There was nothing in the case and there was nothing in the offer which would go to show that an inspection of the sewer or notice of its existence would put the plaintiff upon such inquiry as would lead him to a discovery of the easement or servitude. Indeed, it is not the existence of the drain or sewer that is the subject-matter for which compensation has been made. The trial court has decided that the property was of diminished value because there existed an outstanding perpetual right in a municipal corporation to enter upon the lands at any time for the public purpose of enlarging, cleansing or repairing the sewer. Nor has the court found as

a fact, as is claimed, that the plaintiff had no knowledge of the existence of the sewer. What the court found was that the plaintiff had no knowledge or notice of the existence of the sewer and of the easement of the city of Newport. The fact is uncontroverted. There is nothing in the case to show that the judgment of the Special Term, permitting a specific performance with compensation, rested upon the assumed fact that the plaintiff did not know of the existence of the sewer. It is, however, based upon the fact that he had no knowledge that any third person had a right in and to the premises which he had bargained for. Under the facts established in this case, though the plaintiff knew of the existence of this sewer, that knowledge would not put him upon inquiry as to who had a right to use it or control it, for there was nothing in the premises, so far as could be seen, that was different from the ordinary drainage of land in that locality.

The only remaining question is, whether the plaintiff has used due diligence in prosecuting his rights under the contract. The facts constituting the alleged laches are properly set up in the answer of the defendant Blagden. The plaintiff was made aware of the existence of the easement on July 28, 1881, when the defendants refused to make compensation or award him damages for the easement which he had then discovered for the first time. His right of action accrued at that time. The nature of the case is such that the courts could properly require diligence in its prosecution. There are, however, facts which we think are sufficient to justify the slight delay that was made in this case. A short time elapsed after the time appointed for the consummation of the agreement in endeavoring to get the city authorities of Newport to relinquish their rights, to such an extent as that the plaintiff would accept the deed of the defendant. Furthermore, an action was brought in the Superior Court of the city of New York for the same purpose, but which was abandoned in April, 1882, for the reason that the plaintiff had not succeeded in getting the proper parties before the court. There was a continual assertion by the plaintiff of his right to a deed, with compensation up to this time, and such claim was repeated by bringing this action in January, 1883. The delay was not caused by any fault of the plaintiff, because, as it is found, he had instructed his counsel to bring the

action shortly after the failure of the defendants to deliver him a proper deed, and again gave such instructions after the discontinuance of the first action. A further circumstance for excusing any apparent laches on the part of the plaintiff, is the fact that his son, who was the attorney of record, was for a considerable time in New Mexico, and that his absence was the cause of some delay.

There was at no time a relinquishment by the plaintiff of any claim that he made against the defendant for a deed with proper compensation; on the contrary, he asserted it at all times, and gave the defendant Blagden, who subsequently purchased the land of the other defendants, notice of his claim before that purchase was made.

The judgment should be affirmed, with costs.

Judgment reversed, new trial ordered, costs to abide event.