# SUPREME JUDICIAL COURT

#### FOR THE

### COUNTIES OF SUFFOLK AND NANTUCKET, MARCH TERM 1851, AT BOSTON.

PRESENT:

Hon. LEMUEL SHAW, Chief Justice.
Hon. CHARLES A. DEWEY,
Hon. THERON METCALF,
Hon. RICHARD FLETCHER, } Justices.
Hon. GEORGE T. BIGELOW,

---

### Edward King *vs.* The State Mutual Fire Insurance Company.

A mortgagee, who, at his own expense, insures his interest in the property mortgaged, against loss by fire, without particularly describing the nature of his interest, is entitled, in case of a loss by fire before payment of the mortgage debt, to recover the amount of the loss of the insurers to his own use, without first assigning his mortgage, or any part thereof, to them.

THIS was an action of assumpsit upon a policy of insurance, and was submitted to the court of common pleas, and, on appeal, to this court, upon the following statement of facts:

"It is agreed that the defendants insured the plaintiff, in

the sum of $300, on his interest in a certain barn, by the policy declared upon in this action, (a copy of which policy is hereunto annexed); that the building so insured was de-stroyed by fire, as in the plaintiff's declaration alleged; that the defendants had due notice thereof; and that the plaintiff is entitled to recover the amount insured by the terms of the policy, with the interest thereon, unless the court shall be of opinion that the plaintiff is not entitled to maintain this ac-tion.   It is admitted, that the plaintiff's interest in the pre-mises insured was that of mortgagee of one John Murphy, as expressed in a certain deed of mortgage, dated the 1st of April, 1845, a copy of which is hereto annexed.   After notice of the loss, and previous to the commencement of this action, the defendants informed the plaintiff that they were ready, and offered, to pay him, if he would assign his mortgage inte-rest to the same amount.   But the plaintiff declined to assign his mortgage; and the defendants refused to pay the loss, un-less such assignment should be made by the plaintiff."

The material part of the policy, which was dated the 1st of January, 1847, was as follows:

" This policy of insurance witnesseth, That, whereas Edward King, of Dor-chester, in the county of Norfolk, a member of the State Mutual Fire Insurance company, has, agreeably to the by-laws of said company, (hereunto annexed,) paid the sum of three dollars and seventy-five cents, as premium, and the further sum of three dollars and seventy-five cents, as deposit; and also bound and obliged himself, his heirs, executors, and administrators, to pay all such sum or sums as may be assessed by the president and directors of said company, pursuant to the said by-laws, but not in any event to exceed the sum of fifteen dollars: In consider-ation of the premises, the said King, his heirs, executors, and administrators, are hereby insured against loss or damage by fire, under the conditions and limitations expressed in the said by-laws, and in this policy, for one year, from the first day of January, at noon, until the first day of January, which will be in the year one thousand eight hundred and forty-eight, at noon, the sum of three hundred dollars, on his interest in a two-story wooden barn, on Mill street, situated in Dorchester, in the county of Norfolk, occupied as a stable, by John Murphy; being not more than the actual value of said property, as appears by the proposal of the said insured, lodged with the secretary of this company.   This company hereby express their intention to rely upon a lien upon the property hereby insured, to secure the payment of the assessments that may be made according to the by-laws and the act of incorporation."

By the mortgage referred to, John Murphy conveyed to the plaintiff the land on which the barn in question stood, with

all the buildings thereon, to secure the payment of a promissory note for the sum of $400.

The case was argued at November term, 1849.

*J. A. Andrew*, for the plaintiff.

*O. S. Keith*, for the defendants, cited *Sadlers' Company* v. *Babcock*, 2 Atk. 554, 556; *Lynch* v. *Dalzell*, 4 Bro. P. C. (Toml. ed.) 431, 435; *Carpenter* v. *Providence Washington Ins. Co.* 16 Pet. 495, 503; 3 Kent, (5th ed.) 371; *Howland* v. *Leach*, 11 Pick. 151; *Couch* v. *Ingersoll*, 2 Pick. 292; *Egbert* v. *Chew*, 2 Green, N. J. 446; *Green* v. *Reynolds*, 2 Johns. 207.

The opinion was delivered at March term, 1850.

SHAW, C. J.    This case comes before the court on a statement of facts. The statement is not very full and exact. We understand, from the statement and from the policy, which is made part of it, that the plaintiff made the insurance in his own name and for his own benefit, not describing his interest as that of a mortgagee, and paid the premium out of his own funds. The insurance was for $300, on his interest in a two-story wooden barn. That interest, in fact, as it appears in the statement of facts and the mortgage deed produced, was that of a mortgagee under a deed previously made to him, by one Murphy, conditioned for the payment of $400, which debt was outstanding and unpaid at the time of making the policy, the fire, and the demand of payment. The defendants admit the loss by fire, within the time, and admit their liability, unless they have a right, as a preliminary condition to such payment, to demand an assignment of the plaintiff's mortgage interest, as set forth in the statement of facts, or such proportion thereof, as the amount so to be paid by them would bear to the whole mortgage debt. The plaintiff declined making such assignment, and brought this action to recover a total loss.

The court are of opinion that the plaintiff having insured for his own benefit, and paid the premium out of his own funds, and the loss having occurred by the peril insured against, he has, *primâ facie*, a good right to recover; and having the same insurable interest at the time of the loss

which he had at the time of the contract of insurance, he is entitled to recover a total loss. The court are further of opinion that, if the defendants could have any claim, should the plaintiff hereafter recover his debt in full of the mortgagor, it must be purely equitable; that the defendants can have no claim until such money is recovered, if at all; and, therefore, that they have no right to demand the partial transfer of the mortgage debt, by them required, as a condition to their liability to pay, pursuant to the terms of their policy. This consideration is perhaps decisive of the present case; but the question having been argued upon broader grounds, and some authorities cited to sustain the claim of the defendants, which may give rise to further litigation, we have thought it best to consider the other question now.

We are inclined to the opinion, both upon principle and authority, that when a mortgagee causes insurance to be made for his own benefit, paying the premium from his own funds, in case a loss occurs before his debt is paid, he has a right to receive the total loss for his own benefit; that he is not bound to account to the mortgagor for any part of the money so recovered, as a part of the mortgage debt; it is not a payment in whole or in part; but he has still a right to recover his whole debt of the mortgagor. And so, on the other hand, when the debt is thus paid by the debtor, the money is not, in law or equity, the money of the insurer who has thus paid the loss, or money paid to his use.

The contract of insurance with the mortgagee, is not an insurance of the debt or of the payment of the debt; that would be an insurance of the solvency of the debtor; of course, as a contract of indemnity, it is not broken by the non-payment of the debt, or saved by its payment.

It is not, strictly speaking, an insurance of the property, in the sense of a liability for the loss of the property by fire, to any one who may be the owner. It is rather a personal contract with the person having a proprietary interest in it, that the property shall sustain no loss by fire within the time expressed in the policy. It is a personal contract, which does not pass to an assignee of the property. *Lynch* v. *Dalzell*, 3 Bro.

P. C. 497; *Columbia Ins. Co.* v. *Lawrence*, 10 Pet. 507. A mortgagee has a proprietary interest, a title as owner, in the mortgaged property, not indeed absolute, but defeasible; still, it is a proprietary interest in that property, and the insurer guarantees to him, that the subject in which he has such interest shall not be destroyed or diminished by the peril insured against.

There is no privity of contract or of estate, in fact or in law, between the insurer and the mortgagor; but each has a separate and independent contract with the mortgagee. On what ground, then, can the money thus paid by the insurer to the mortgagee be claimed by the mortgagor? But if he cannot, it seems, *a fortiori*, that the insurer cannot claim to charge his loss upon the mortgagor, which he would do, if he were entitled to an assignment of the mortgage debt, either in full or *pro tanto*.

The better to understand the precise case under consideration, it may be well to distinguish it from some, which may seem like it, but depend on other principles.

If the mortgage debt is paid, and the mortgage discharged *before* the loss by fire, it may well be held, that the mortgagee, the assured, cannot recover; not merely because the debt is paid, but because the mortgage is thereby redeemed, and revested in the mortgagor; and the proprietary interest of the assured in the property insured, in respect to which alone he had any insurable interest, is determined. And it is a fixed rule of law, that, to make a policy valid, and enable the assured to recover a loss, he must have an interest in the subject, when the contract is made, and when the loss occurs. He must have such an interest when the contract is made, otherwise it is a wager policy, and void; and when the fire occurs, otherwise he sustains no loss by any damage done by the fire to the thing insured, and he has no claim on the contract of indemnity. So, if an owner insure his house, which is burnt within the time limited; if he has sold his house in the mean time, he has no legal claim to recover.

Another case, quite distinguishable, is, where the mortgagor causes insurance to be made on the mortgaged premises, pay-

1*

able to the mortgagee in case of loss. In that case, it is the mortgagor's interest in the subject which is insured, with an irrevocable power of attorney, in legal effect, an assignment, to the mortgagee, as additional collateral security, to receive the avails of the loss, if one happens. In such case, it is very clear that, in case of loss, the insurers must pay the whole amount of the loss, without regard to the fact, that the debt has or has not been paid. If the mortgage debt has not been paid, the money received will go to pay it *pro tanto*, and thus enure to the benefit of the mortgagor, by leaving so much less of his debt for him to pay. If the mortgage debt has been paid, then the loss, when received by the mortgagee, is received from a fund placed in his hands for a special purpose, which has been accomplished; it is the proceeds of an insurance of the interest of the mortgagor, by a contract with him, on a consideration made by him, and assigned to the mortgagee; and of course he receives it to the use of the mortgagor, and must account to him for it.

There is another case not uncommon in practice, where it is agreed at the time of the making of the mortgage, that the mortgagee may cause the property to be insured at the expense of the mortgagor, and that the premium shall be added to the principal and interest, as the debt to be paid on redemption. This is a valid contract; it is not obnoxious to the charge of usury; for, though the sum thus paid enures incidentally to the benefit of the mortgagee, it goes ultimately to the mortgagor's benefit. Then, if a loss occurs before the debt is paid, the sum payable to the mortgagee is the proceeds of a security furnished by the mortgagor, and then, by a general rule of law, applicable to the proceeds of all collateral security furnished by a debtor to his creditor, it goes in reduction of the debt. It is, in effect, a security furnished by the mortgagor; the money received under it is his money, and extinguishes his debt in the same manner as if paid by him.

In all these cases, the mortgagor pays the premium; the amount of insurance is a sum placed in the hands of the mortgagee, at the expense of the mortgagor, and as further collateral security for the debt, and of course the mortgagee is

trustee for the mortgagor, first, to apply the proceeds of that, as of all other collateral securities, to the payment of his debt; but if the debt has been paid, or there is an overplus, he is trustee for the mortgagor. But this furnishes no defence to the insurer. The mortgagee had a title, a qualified title, to the whole mortgaged property; had a right to insure the whole insurable value in his own name; and whether, having recovered the whole, he has a right to retain it to his own use, or is bound to account for it to the mortgagor, it is wholly immaterial to the insurer. It depends on the contract or the relations subsisting between the mortgagor and mortgagee, with which the insurer has no concern.

So it was held in a New York case, that a commission merchant, who had made advances or incurred expenses on goods consigned to him for sale, might insure the whole and recover the whole in his own name; and that it was no defence for the insurer, that the assured was not absolute owner, or might be liable to account to his principal. *De Forest* v. *Fulton Ins. Co.* 1 Hall, 84.

But it is then intimated that the mortgagee is trustee for the mortgagor; and that, on the ground of this fiduciary relation, what he receives in that character he must account for. But in truth he is not such trustee. Nothing (an eminent judge has said) is so likely to mislead as a simile. In some very limited respects, a mortgagee is a trustee; as when he has entered, and is in the receipt of the rents and profits, he is liable to account therefor, and in that respect may be denominated a trustee. This point has arisen in many cases; but a recent one is direct to the point, and decisive. *Clarke* v. *Sibley*, 13 Met. 210. *Wilde*, J., in giving the opinion of the court, cites the case of *Cholmondeley* v. *Clinton*, 2 Jac. & Walk. 183.

If this is true in England, where the rights of the mortgagee, after condition broken, are purely equitable, and such as are administered by a court of equity; much more in Massachusetts, where the right to redeem, after condition broken, is ascertained and regulated by law, as effectually as the right of the mortgagee to hold for the security of the debt.

Besides; if the fiduciary relation subsisted, and the mortgagee were held to be a trustee for the mortgagor, it would follow that, as every reasonable expense incurred by the trustee would be chargeable upon the trust fund, a premium of insurance on buildings held for security, honestly and judiciously made, would be a charge on the fund, as much so as necessary repairs. But, in the absence of contract, no such charge is allowed to the mortgagee, in taking an account on a bill to redeem. *White* v. *Brown,* 2 Cush. 412. Certainly, before entry for condition broken, the relation of mortgagee and mortgagor is that of contracting parties, and not that of trustee and *cestui que trust.*

But it is said, and in this certainly lies the strength of the argument, that it would be inequitable for the mortgagee first to recover a total loss from the underwriters, and afterwards to recover the full amount of his debt from the mortgagor, to his own use. It would be, as it is said, to receive a double satisfaction. This is plausible, and requires consideration; let us examine it. Is it a double satisfaction for the same thing, the same debt or duty?

The case supposed is this : A man makes a loan of money, and takes a bond and mortgage for security. Say the loan is for ten years. He gets insurance on his own interest, as mortgagee. At the expiration of seven years the buildings are burnt down; he claims and recovers a loss to the amount insured, being equal to the greater part of his debt. He afterwards receives the amount of his debt from the mortgagor, and discharges his mortgage. Has he received a double satisfaction for one and the same debt?

He surely may recover of the mortgagor, because he is his debtor, and on good consideration has contracted to pay. The money received from the underwriters was not a payment of his debt; there was no privity between the mortgagor and the underwriters; he had not contracted with them to pay it for him, on any contingency; he had paid them nothing for so doing. They did not pay because the mortgagor owed it; but because they had bound themselves, in the event which has happened, to pay a certain sum to the mortgagee.

But the mortgagee, when he claims of the underwriters, does not claim the same debt. He claims a sum of money due to him upon a distinct and independent contract, upon a consideration, paid by himself, that upon a certain event, to wit, the burning of a particular house, they will pay him a sum of money expressed. Taking the risk or remoteness of the contingency into consideration, (in other words, the computed chances of loss,) the premium paid and the sum to be received are intended to be, and in theory of law are, precisely equivalent. He then pays the whole consideration, for a contract made without fraud or imposition; the terms are equal, and precisely understood by both parties. It is in no sense the same debt. It is another and distinct debt, arising on a distinct contract, made with another party, upon a separate and distinct consideration paid by himself. The argument opposed to this view seems to assume that it would be inequitable, because the creditor seems to be getting a large sum for a very small one. This may be true of any insurance. A man gets $1,000 insured for $5, for one year, and the building is burnt within the year; he gets $1,000 for $5. This is because, by experience and computation, it is found that the chances are only one in two hundred that the house will be burnt in any one year, and the premium is equal to the chance of loss. But suppose — for in order to test a principle we may put a strong case — suppose the debt has been running twenty years, and the premium is at five per cent, the creditor may pay a sum, equal to the whole debt, in premiums, and yet never receive a dollar of it from either of the other parties. Not from the underwriters, for the contingency has not happened, and there has been no loss by fire; nor from the debtor, because, not having authorized the insurance at his expense, he is not liable for the premiums paid.

What, then, is there inequitable, on the part of the mortgagee, towards either party, in holding both sums? They are both due upon valid contracts with him, made upon adequate considerations paid by himself. There is nothing inequitable to the debtor, for he pays no more than he originally received, in money loaned; nor to the underwriter, for he has only paid

upon a risk voluntarily taken, for which he was paid by the mortgagee a full and satisfactory equivalent.

It may then be said, that, upon these grounds, a wager policy might be held valid, and a good ground of action. We suppose a wager policy is not held void because it is without consideration, or unequal between the parties; but because it is contrary to public policy, and prohibited by positive law. But, independently of considerations of public policy, if an insurance were made on a subject in which the assured has no pecuniary interest — although in other respects he may be deeply concerned in it, and on that ground be willing to pay a fair premium — made with a full knowledge of all the circumstances, by both parties, without coercion or fraud, we cannot perceive why it would not be valid as between the parties. But upon the strong objections, on grounds of public policy, to all gaming contracts, and especially to contracts which would create a temptation to destroy life or property, such policies, without interest, are justly held to be void.

We are not unaware, that there are very respectable authorities opposed to the views of the law above taken.

Mr. Phillips, in treating of the rights of parties after an abandonment, seems to put the rights of the underwriter, who has paid a loss, on the ground of subrogation, and then adds: " Where a policy against fire is effected by a mortgagee for his own benefit, in case of loss, and payment by the underwriters, they thereby become entitled to a proportional interest in the debt secured by the mortgage." 2 Phil. Ins. (2d ed.) 419. In support of this position, the learned author cites several authorities, which we propose to examine.

*Robert* v. *Traders' Ins. Co.* 17 Wend. 631. We think this case does not support the position for which it is cited. The mortgagor was the assured, and had assigned his policy to the mortgagee. Of course, it was the interest of the mortgagor which was insured, and it was assigned by him to the mortgagee, as a further collateral security. A suit was brought in the name of the mortgagor, the assured, but for the benefit of the mortgagee, and judgment obtained against the insurers; and before the satisfaction of that judgment, the mortgage

debt was paid to the mortgagee by the mortgagor, by coercion, to avoid foreclosure, and the interest of the mortgagee was thus determined; and it was insisted by the defendants, that this satisfaction of the debt discharged the judgment on the policy. But it was held otherwise, and that the mortgagor was entitled to recover the insurance. The effect of this adjudication was, that it was an insurance made upon the interest, at the expense, and for the ultimate benefit of the mortgagor; that the assignee had a right to recover to his own use, until the payment of his debt, and then held as trustee for the mortgagor. This case, we think, affirms the principles on which we proceed.

Mr. Phillips also cites *Tyler* v. *Ætna Ins. Co.* 16 Wend. 385. Some portion of the language of the chancellor, in giving the judgment of the court of errors, in that case, is certainly more in point. He states, that one who has a lien on land and buildings for unpaid purchase money, has an insurable interest, and may insure and recover to the whole amount of the unpaid purchase; but he adds, that when he shall receive that money from the purchaser, he will be bound, by the principle of equitable subrogation, to account for it to the insurers who have paid his loss. The case went through several courts, and is somewhat complicated. As we understand it, these latter remarks of the chancellor stated a principle not necessary to the decision of the case. The questions were, whether the plaintiff, who held a bond for a deed, an equitable title only, had an insurable interest, and whether he had any prior insurance when the policy was made. It was held, that a policy obtained by his vendor, the owner of the fee, was not an insurance in which this plaintiff had, or could have, any interest, and therefore, that it was no insurance for him. The remarks above cited applied to the policy obtained by the owner of the fee, which would cover his debt only, and subject him to account, in case of receiving the money from the debtor after recovering it from the underwriters. Whether such would be the consequence or not, could make no difference, in regard to the right of this plaintiff to recover of these defendants, and was not, therefore, embraced in the judgment.

Looking at the analogies and illustrations on which the reasoning of the learned chancellor is founded, it may be a question, whether he has not relied too much on the cases of marine insurance, in which the doctrines of constructive total loss, abandonment, and salvage, are fully acknowledged, but which have slight application to insurances against loss by fire.

We are then brought to the case of *Carpenter* v. *Providence Washington Ins. Co.* 16 Pet. 495. The language of Mr. Justice Story, in giving the opinion of the court in that case, is certainly very strong; but the part of it which bears upon the point of the present case was not necessary to the judgment of the court. The question for the court was, whether Carpenter, the plaintiff, had a prior insurance on the premises at the time of making this policy, not disclosed. In fact, he had before made an insurance on his own interest, for the purpose of assigning it to a mortgagee, and had assigned it to a mortgagee; so that it was insisted, that it was not a prior assurance to himself, when he obtained the policy now in suit. But it was held, that, being a policy made by the mortgagor on his own interest, and assigned to his mortgagee, as a further collateral security, it was in legal effect an insurance for himself; because, if recovered by the assignee, it would go to pay his own debt, *pro tanto*, and relieve him; if his debt was otherwise paid, the assignee would recover as trustee to the mortgagor; so that, either way, it was an assurance for him. The judge is pointing out the difference between an insurance of the interest of a mortgagor, assigned by him to his mortgagee, and an insurance direct to a mortgagee, on his interest as mortgagee, and then states that his interest is the debt, and that, if he first recovers of the underwriters, as he may if his debt is not paid, and afterwards the debt is paid by the mortgagor, he will hold the money in trust for those insurers who have paid him his loss. It is obvious, we think, that these last observations were merely following out a train of thought, suggesting the distinctions between the two species of insurance, and that the principle announced was not necessary to the decision, and may not, therefore, be necessarily con-

sidered as the judgment of the court. Indeed, it may have been the learned judge's own first impression, without having carefully considered it, in all its relations. Any statement of legal principle from so high a source is entitled to great respect; but under the circumstances we cannot deem it conclusive.

It is obvious to remark, as the result of all these cases, concurring with many others, that a mortgagee has an insurable interest; that he may insure generally on the property, and need not disclose the peculiar nature of his interest, unless inquired of; that, before payment of his debt, he may recover and receive to the amount of his debt; and that it is no defence for the underwriter, that the plaintiff holds a defeasible, and not an absolute, title to the property insured.

Some other cases are referred to, as analogous, but the analogy is not very clear or direct.

In *Godsall* v. *Boldero*, 9 East, 72, a creditor made insurance on the life of Mr. Pitt; Mr. Pitt died insolvent whilst the policy was in force, and an action was commenced. Before it came to trial, the debt was paid by the executors, from funds furnished by parliament for that purpose, and it was held to be a bar to the plaintiff's action. Strictly speaking, one can have no interest, in the nature of property, in the life of another; and we think that this case, influenced to some extent by existing English statutes, was decided on the ground that the interest was terminated when the debt was paid. Besides, it might well be maintained, that, in consequence of Mr. Pitt's devotion to the public service, and in honor to his memory, the government intended by the public bounty to provide that no one should suffer pecuniary loss by his insolvency; and that to permit the plaintiffs to recover, would be to throw a loss on the insurers, for which they could have no indemnity. The bearing of this case upon the present is but slight.

In a recent edition of Kent's Commentaries, the principle, that the insurer on the interest of a mortgagee, as such, on payment of a loss, is entitled to a proportion of the mortgage debt, is stated in a note, on the authority of *Carpenter* v. *Pro-*

*vidence Washington Ins. Co.;* but it seems to add nothing to the weight of that authority.

On a view of the whole question, the court are of opinion, that a mortgagee who gets insurance for himself, when the insurance is general upon the property, without limiting it in terms to his interest as mortgagee, but when, in point of fact, his only insurable interest is that of a mortgagee, in case of a loss by fire, before the payment of the debt and discharge of the mortgage, has a right to recover the amount of the loss for his own use. *Judgment for the plaintiff.*

---

NOTE. Since the foregoing decision, a case has been published here, as decided in England about the same time, by vice-chancellor Wigram, involving the same principles. *Dobson* v. *Land,* 8 Hare, 216. The case, with a review of it from the London Jurist, will be found in 13 Law Reporter, 247.

The question there was upon the other branch of the proposition — whether a mortgagee in possession, on stating his account under a bill to redeem, had a right to charge premiums of insurances, obtained by himself, on buildings constituting part of the mortgaged property, and add the same to the principal and interest of his debt; and it was decided that he could not. It was conceded that this involved the correlative proposition that, if the mortgagee had received any sum by way of loss on such policies, he would be under no obligation in equity to credit it to the mortgagor, or be responsible to him for it.

In the review of this judgment, appended to it in the Law Reporter, a strong effort is made, and many authorities cited, to prove that the principle adopted by the vice-chancellor was incorrect. But it is obvious to remark, that, even if the reviewer were right in questioning the correctness of the above decision, he places his reasoning on grounds which would be applicable to an English mortgage only, and not to a mortgage in Massachusetts. The grounds are, that, by the law of England, when the condition of the mortgage is broken by the non-payment of the debt on the day stipulated, the title

of the mortgagee becomes absolute at law; that the right to redeem is the mere creature of a court of equity; that, upon the maxim, that he who seeks the aid of a court of equity must do equity, in doing this equity, he must reimburse to the mortgagee every reasonable expense which he has incurred on account of the mortgaged premises; and that an insurance on buildings is a reasonable and proper expense, and therefore that it should be chargeable; also, that the mortgagee is trustee for the mortgagor, and must account for every profit and benefit derived from the trust property; that, as his ability to insure, or insurable interest, is derived from the trust property, on general principles he is accountable for it to the *cestui que trust.* As to the last ground, the fiduciary relation, it was held by the judgment not to exist. As to the other were it sound as applicable to English mortgages, it could not apply to a mortgage regulated by the laws of this state, where the rights of the parties depend on contract, and not on trust, and where the right to redeem is a right as well created, established, and regulated by law, as the right to foreclose.