ALDEN ANDREWS *vs.* NEW BRITAIN NATIONAL BANK, EXECUTOR, ET ALS.

First Judicial District, Hartford, May Term, 1931.

MALTBIE, C. J., HAINES, HINMAN, BANKS and AVERY, Js.

Argued May 6th—decided July 29th, 1931.

*Mortimer H. Camp* and *Margaret P. Camp,* for the appellants (defendants).

*John T. Robinson* and *John C. Parsons,* for the appellee (plaintiff).

MALTBIE, C. J. The facts necessary to present the questions of law involved in this case may be stated rather briefly. There is no need to consider in detail the appellants' motion to correct which largely concerns immaterial matters. Such material corrections as should be made are incorporated in the following statement. On May 14th, 1912, the plaintiff owned a two and one half acre lot in New Britain on which was situated his home. It had formed a portion of a large tract of land owned by his father and the lot was subject to a life use in favor of the latter. The plaintiff's

two brothers and his sister also had a fifty foot right of way across a portion of it to adjoining lands owned by them. The plaintiff had a very intimate friend, William J. Long. Long was forty-eight years old and the plaintiff a year or two older. Long had a wife fifty-two years of age and no children. Prior to May 14th, 1912, the plaintiff and Long discussed the matter of Long's moving from his residence in the city and coming to live near the former's home. Long, to quote the finding, "made the suggestion to Andrews that he be allowed to build a house on a portion of the plaintiff's home lot, and stated if he be allowed to do so he would build a house thereon which would be an addition to the neighborhood and that upon the death of Long and his wife the land and the house intact would revert to the plaintiff or if the plaintiff were then deceased, to his wife or heirs." The defendants seek to have stricken out the words "or if the plaintiff were then deceased, to his wife or heirs," but they are reasonably supported by the evidence. The plaintiff agreed to this proposal but no writing containing its terms was ever made. On May 14th, 1912, the plaintiff, his father, his brothers and sister executed and delivered to Long a quitclaim deed of a portion of the lot, containing the usual provisions of such a deed. The plaintiff's father joined in the deed in order to release his life use, and the plaintiff's brothers and sister, to release their interests in the right of way. No money was paid for this conveyance. The lot was then worth about $450. Long took possession of the property, filled in the lot and erected a brick bungalow, the whole costing about $4300. Thereafter Long acted as would an owner of the premises; he made a mortgage in which he warranted that he was well seized of the premises as a good indefeasible estate in fee simple; and he paid the taxes on the property and insurance

premiums on the house. He stated, however, to various people at various times that the house and lot were the property of the plaintiff. Long's wife died in 1929 and he died in 1930. At the time of his death the house and lot were worth about $9000 and at the time of trial about $8500. Long left a considerable estate and a will, in which no mention was made of the premises in question, but in which he made certain bequests and gave the residue of his property to the defendant bank as trustee for the benefit of his wife during her life and at her death to be distributed among various persons and charitable organizations; and in this distribution, all the beneficiaries named were given corporate stock or sums in cash except as to the residue which was given to four charitable organizations. The present action is brought by the plaintiff against the bank as executor and these charitable organizations, seeking to impress a trust upon the lot in question, a decree vesting title in the premises in the plaintiff and requiring the defendants to convey their interests to him, an injunction against their making any claim to the premises, and any other appropriate equitable relief. From a judgment for the plaintiff the defendant bank and two of the charitable organizations have appealed, a stipulation by the other charitable organizations having been filed in which it is agreed that the decision in this appeal shall be conclusive upon their rights.

Briefs of counsel quite largely discuss the question at issue from the standpoint of the sufficiency of the facts to give rise to an enforceable trust for the benefit of the plaintiff. But we see in them no trust relationship whatsoever. The quitclaim deed stated a valuable consideration and this is sufficient to rebut any claim of trust resulting at the time the deed was made. *Belden* v. *Seymour*, 8 Conn. 304, 312; *Meeker* v.

*Meeker,* 16 Conn. 383; *Murray* v. *Klinzing,* 64 Conn. 78, 85, 29 Atl. 244. In *Hartford-Connecticut Trust Co.* v. *Devine,* 97 Conn. 193, 196, 116 Atl. 239, we said: "The modern rule permitting the actual situation to be inquired into notwithstanding the presence of a seal, cannot be carried so far as to permit proof of an entire absence of consideration for the purpose of nullifying the effect of a deed as a legal act; that is, of denying its legal effect as a conveyance of a specified title to the described premises." If we do inquire into the consideration upon which the deed was given we find that not merely did Long change his place of residence in reliance upon it but he agreed to and did expend more than $4000 in preparing the land and erecting a house, so that in no sense could the deed be said to have been given without consideration. There was, then, no resulting trust growing out of a lack of consideration for the deed.

A trust has been defined as follows: " 'A trust is where there are rights, titles, and interests in property distinct from the legal ownership. In such cases, the legal title, in the eye of the law, carries with it, to the holder, absolute dominion; but behind it lie beneficial rights and interests in the same property belonging to another. These rights, to the extent to which they exist, are a charge upon the property, and constitute an equity which a court of equity will protect and enforce whenever its aid for that purpose is properly invoked.' " *Plum Trees Lime Co.* v. *Keeler,* 92 Conn. 1, 10, 101 Atl. 509. By the terms of the agreement no duty was imposed upon Long except that growing out of his promise to build a house upon the lot conveyed to him. This would create nothing more than an obligation in the plaintiff's favor, which would not in any sense give rise to a trust. *Hyland* v. *Crofut,* 87 Conn. 49, 54, 86 Atl. 753. No duty was imposed by the agree-

ment upon Long to convey or devise the land to the plaintiff or anyone else. Had the agreement been reduced to writing, it would have merely been one under which the lot was to be conveyed to Long for his life and that of his wife, with a reversion to the plaintiff or his representatives. In other words, it would have created a life estate in the premises measured by Long's life and that of his wife, if she survived him. A life tenant is not a trustee. To be sure, as regards certain obligations resting upon him either by virtue of his limited estate or the terms of the instrument creating it, it has been said that equity will treat him as a quasi-trustee. *Johnson* v. *Johnson,* 51 Ohio St. 446, 461, 38 N. E. 61; 2 Perry, Trusts (7th Ed.) § 540. But he does not hold the legal title as trustee. The situation is similar to that of a mortgagee in possession, whom equity may also look upon as a quasi-trustee in relation to certain obligations, but who is in no true sense a trustee. *King* v. *State Mutual Fire Ins. Co.,* 61 Mass. (7 Cush.) 1, 7.

The deed to Long recites that the grantors absolutely release, remise and quitclaim to him "his heirs and assigns forever" the property in question and describes it; then there is added: "It being the intention of this deed to give title to this property to said William J. Long, further described" by bounds upon the highway and adjoining owners; and the habendum runs to Long "and to his heirs and assigns." "Title," as used broadly, means "the right to, or ownership in, land." *Liberman* v. *Beckwith,* 79 Conn. 317, 321, 65 Atl. 163. Reading the entire deed by itself there would be no question but that it conveyed an absolute estate in fee, so far as the grantors could convey one. The issue, then, reduced to its essence is: Can the parol agreement be made of avail to reduce the apparent absolute estate conveyed by the deed to one

for the lives of Long and his wife?' In *Dean* v. *Dean,* 6 Conn. 285, it was held that an absolute quitclaim deed expresed to be upon a valuable consideration could not be converted into a conveyance in trust for the grantor, by proof of an oral agreement to that effect, though there, as here, the grantee was found to have always acknowledged the agreement and had even been solicitous to have it reduced to writing. In *Verzier* v. *Convard,* 75 Conn. 1, 52 Atl. 255, a similar situation was before us; the deed in that case was a warranty deed, absolute in its terms except that it was conditioned upon the support of the grantor during his life; it was claimed that the conveyance was subject to an oral agreement that at the grantor's death it should be distributed to his heirs; but we held that this agreement resting in parol could not be made of avail. In *Fisk's Appeal,* 81 Conn. 433, 436, 437, 71 Atl. 559, it is said that "parol evidence cannot be introduced to contradict an absolute deed, but may be admitted to show that such a deed was given under certain circumstances and in pursuance of a parol agreement as to the use to be made of it. This does not vary the contract expressed in the deed. It simply shows it to have been made as a step in the execution of and in conformity with a prior undertaking." And it was there held that, the particular agreement which it was sought to enforce being taken out of the statute under the applicable principles of law, a claim based upon it might be enforced. In *Onofrio* v. *Cirusuolo,* 109 Conn. 521, 147 Atl. 36, we enforced a provision of an oral agreement in pursuance of which an absolute deed was given, which was in effect a mortgage, on the ground that the only portion of the agreement within the statute having been performed a collateral provision not within the statute might be given effect.

The result of these decisions is that the proof and

enforcement of an oral agreement in pursuance of which a deed is given may not be a violation of the parol evidence rule, but such an agreement cannot be enforced if it is within the prohibition of the statute of frauds. The oral agreement in this case clearly was within the terms of the statute. The plaintiff contends that the execution and delivery of the deed with possession thereunder constituted such a part performance as would take the agreement out of the statute. But this claim is not tenable for the reason that to constitute part performance the conduct relied upon must be referable to and consistent with the oral agreement, and the making of an absolute deed of the premises to Long was wholly inconsistent with the oral agreement under which a life estate alone would have been created. *Van Epps* v. *Redfield,* 69 Conn. 104, 110, 36 Atl. 1011; *Santoro* v. *Mack,* 108 Conn. 683, 691, 145 Atl. 273; *Bunton* v. *Smith,* 40 N. H. 352. In *Verzier* v. *Convard, supra,* the facts of which we have stated above, we said (p. 7): "Applying these principles to the facts in this case, it is clear that the conditions for the admission of oral testimony to charge a trust upon this conveyance, are entirely wanting. The conduct of the parties attending and following the giving of the deed, and during the succeeding seven years which remained of the grantor's life, was throughout entirely consistent with its provisions. Not an act can be suggested which is not naturally referable to its stipulations. There is not a thing to suggest, even remotely, that there was any other agreement between the parties than that which the deed evidenced. Without the oral evidence, the plaintiffs' contention that there was an agreement, would stand absolutely without proof. The plaintiffs' case is, therefore, the bald one of an attempt to create an express trust in lands by parol evidence alone. It must, there-

fore, fail." This requirement that part performance to make effective an oral agreement must be referable to it and consistent with its terms is a sufficient ground to distinguish the cases relied upon by the plaintiff as showing that the giving of the deed was part performance of the agreement.

The doctrine of equity which permits an absolute deed to be shown by oral evidence or the conduct of the parties to have been really given as security and enforces it as a mortgage seems to constitute an apparent exception in the application of these principles. In our earlier decisions we were inclined to refer this doctrine to the power of equity to interfere in cases of actual fraud, accident or mistake. *Reading* v. *Weston,* 8 Conn. 117, 120; *Brainerd* v. *Brainerd,* 15 Conn. 575, 584; *Osborn* v. *Phelps,* 19 Conn. 63, 74. We have since accorded it a less restricted application. *French* v. *Burns,* 35 Conn. 359, 363; *Williams* v. *Chadwick,* 74 Conn. 252, 50 Atl. 720; *Anderson* v. *Colwell,* 93 Conn. 61, 65, 104 Atl. 242; *Hartford-Connecticut Trust Co.* v. *Devine,* 97 Conn. 193, 196, 116 Atl. 239; *Onofrio* v. *Cirusuolo,* 109 Conn. 521, 525, 147 Atl. 36. It is perhaps to be regarded as a doctrine of an exceptional nature applicable in a situation where from the relationship of the parties or otherwise there is grave danger of imposition or fraud. 1 Jones, Mortgages (8th Ed.) § 393.

The oral agreement was unenforceable against Long in his lifetime and is unenforceable against the present defendants who represent his interest in the property. It is unfortunate that the intent of the plaintiff and Long should be defeated. But the justification of this result must rest in the broad policy expressed in the statute of frauds, that agreements for the sale of land or any interest in or concerning it should not be enforceable unless they or some memorandum of them

be put in writing; General Statutes, § 5982; and in the practical consideration that, if such an oral agreement as was made in this case were enforceable, the way would be open for the creation of all sorts of rights and interests in land by word of mouth alone, contrary to the terms of the solemn instruments which have been formally executed.

There is error, the judgment is reversed and judgment for the defendants directed.

In this opinion the other judges concurred.