[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This case arises out of a dispute between family members over family property. Wilfred Mitchell is the father of the defendants, Scott Mitchell and Lynda Maggi. In this case, the plaintiff-father seeks the setting aside of a deed from him to his two children and requests damages for conversion of a bank account. In a companion case, the plaintiff's daughter requests a partition by sale of the real estate involved in this action.
The events resulting in this action began when the plaintiff's wife and defendants' mother died on November 26, 1988. Prior to that time, the plaintiff and his wife, Linda A. Mitchell, were the owners of the family residence in Danbury, the property involved here. The property was originally held in survivorship, but Linda Mitchell severed the survivorship interest by a deed on May 15, 1987 so that she and the plaintiff each owned a one-half interest in the property as tenants in common. She executed a will on the same date which devised her one-half interest to her son and daughter, the defendants. The will left the residue of the estate in equal one-third shares to the plaintiff and the defendants and named Scott Mitchell as CT Page 1691 executor of the estate. The plaintiff and his wife also had a certificate of deposit in survivorship at a Danbury bank which had a value of $60,000 at its maturity on September 27, 1988, and approximately the same value at the time of Linda Mitchell's death. At that time, the entire proceeds of the certificate became the property of Wilfred Mitchell and the defendants acquired the decedent's one-half interest in the real estate as tenants in common with the plaintiff.
On November 29, 1988, three days after the death of Linda Mitchell, there was a meeting at the subject property between Wilfred Mitchell, Lynda Maggi and her husband. Scott Mitchell was not present. Concern was expressed about the plaintiff's tendency to gamble, his future living plans and ability to pay bills and expenses. The discussions included the fact that the decedent had wanted the bank account equally divided between the plaintiff and the defendants so that each received $20,000. The plaintiff also had concerns about paying his expenses. It was agreed that the bank account would be placed in three names, with two signatures required to withdraw funds. It was also agreed that funds would be withdrawn from the account to meet expenses and that Lynda Maggi would do the bookkeeping and assist her father in paying the bills. While the defendants each withdrew $10,000 and paid a few personal expenses from the bank account, all of the rest of the funds were spent for the plaintiff's benefit and an insignificant balance remains in the account. Whether or not the plaintiff intended a gift of a portion of the account to the defendants, he made no objections to any of the payments, most of them were used for his own benefit, and he has not met his burden of proof, by a preponderance of the evidence, that the defendants have converted the funds.
The conveyance of the plaintiff's one-half interest in the family residence, however, presents a different situation. While the court does not accept the plaintiff's claim of incapacity as a result of his wife's death, he was retired and living on a pension and understandably had some concerns about his future. During the discussion of family finances and property matters, Lynda Maggi proposed transfer of the plaintiff's one-half interest in the house to her and her brother. The court finds credible the plaintiff's claim that the discussions also included an agreement to give the plaintiff a life estate in the house in return. It is not logical that the plaintiff, concerned about his future, would voluntarily divest himself of all his assets without some assurances that he would be taken care in the future by his children and have a place to live. At the time, his only assets were the bank account and the one-half interest in the house, and his only income was a pension of $1,100 per month. CT Page 1692 Scott had refused to talk to his father in the three days between his mother's death and the November 29 meeting, and for sometime thereafter. This also indicates that the plaintiff did not make a voluntary transfer of his remaining interest in the house.
Attorney Stephen Gallagher had represented the Mitchell family for several years and had handled the execution of the mother's will and the deed in 1987. Scott called Gallagher to schedule an appointment for reading the will and instructed Gallagher to prepare a deed transferring the plaintiff's one-half interest to the defendants. Both of them testified that Gallagher was not told to reserve a life estate for the plaintiff in the deed. While the defendants were very close, it is unclear what Lynda told Scott about the agreement for their father to retain a life estate in the property. The plaintiff and Scott met at Gallagher's office on December 2, 1988. The plaintiff signed the deed voluntarily, believing it contained the life estate previously agreed upon in the November 29 conversation with Lynda. Lynda was not present on December 2. There was no discussion of the life estate at the time, and Gallagher knew nothing about the prior agreement. However, one or two days later, Gallagher received another call from Scott discussing with him a "lease for life" for his father to live in the house. This confirms the plaintiff's claim that the life estate had been promised, at least by Lynda, prior to and as consideration for execution of the deed. The court finds that the plaintiff was induced to sign the deed by Lynda's representations on November 29. Scott was a beneficiary of the conveyance, instructed Gallagher to prepare the deed and, according to Lynda, had consented to the life estate.
The complaint alleges that the defendants made untrue and false representations to the plaintiff that he would retain a life use of the property, that the plaintiff believed those representations and relied upon them when he executed the deed. The defendants claim that the plaintiff must prove his claim of fraudulent misrepresentation by clear and convincing evidence and that it is a violation of the parol evidence rule to sign an agreement to give the plaintiff a life estate in the subject property when the deed does not provide for it.
In evaluating these claims, it should be noted initially that the complaint requests a judgment to set aside the deed and declare it void and of no effect. It does not request reformation of the deed to give the plaintiff a life estate in the property. The parol evidence rule is not a rule of evidence but a substantive rule of contract law which CT Page 1693 provides that when the parties have arrived at a written agreement on their legal obligations, it is presumed that the writing contains their entire agreement, and that allowing oral testimony, or prior or contemporaneous conversations to explain a different intent, or to contradict what is in the written instrument, is not allowed. TIE Communications, Inc. v. Kopp, 218 Conn. 281, 288. However, the rule only applies when the parties intended to integrate their negotiations in a written instrument. Associated Catalog Merchandisers, Inc. v. Chagnon, 210 Conn. 734, 740. The parol evidence rule does not of itself prevent the presentation of "parol evidence," that is, evidence outside the four corners of the contract concerning matters governed by an integrated contract, but only forbids the use of such evidence to vary or contradict the terms of such a contract. TIE Communications, Inc. v. Kopp, supra, 288. There was no written contract in this case, and the only written instrument was the deed from the plaintiff to the defendants. Assuming the deed is subject to the parol evidence rule, there are several exceptions to the rule. Parol evidence is admissible to prove a collateral oral agreement which does not vary the terms of the writing. Id., 289; Jay Realty, Inc. v. Ahearn Development Corporation, 189 Conn. 52, 56; Merritt-Chapman Scott Corporation v. Mauro, 171 Conn. 177,194. An oral agreement to give the plaintiff a life estate in the property does not vary the terms of the deed even though the deed does not provide for a life estate. The life estate could be given by a separate deed from the defendants to the plaintiff. Another exception to the rule is that parol evidence is allowed to show mistake or fraud. Id., 195; TIE Communications, Inc. v. Kopp, supra, 289. This case comes within that exception since the plaintiff claims that he was induced to part with his interest in the property because of the misrepresentation that he would retain a life interest in it. Attorney Gallagher was not instructed to put a life estate in the deed or to prepare a separate deed conveying back a life estate to the plaintiff. The defendants' failure to give instructions to Gallagher to carry out the agreement made between the plaintiff and Lynda Maggi was either a mistake or intentional conduct by the defendants.
The Statute of Frauds, section 52-550 of the General Statutes, is also not a valid defense to this case. While an oral agreement to convey an interest in real property is within the Statute of Frauds, Andrews v. New Britain National Bank, 113 Conn. 467, 473, an exception to the statute is made on equitable grounds where failure to allow evidence of an oral agreement would result in perpetuation of actual fraud, accident or mistake. Id., 475; Santoro v. CT Page 1694 Mack, 108 Conn. 683, 690; H. Pearce Real Estate Co. v. Kaiser, 176 Conn. 442, 443. Moreover, while the plaintiff may have been able to claim his right to a constructive trust for the life estate under such cases as Hieble v. Hieble,164 Conn. 56, 60, the complaint does not request reformation of the deed, but rather cancellation of the conveyance on grounds of misrepresentation. In addition, acts of part performance of a verbal agreement and acts done in reliance upon the agreement, such as a conveyance of property, takes the conveyance out of the Statute of Frauds based on equitable principles. Van Auken v. Tyrrell, 130 Conn. 289,294; Hanney v. Clark, 124 Conn. 140, 148; Breen v. Phelps, 186 Conn. 86, 96.
The essential elements of an action in fraud are that a fraudulent representation was made as a statement of fact; that it was untrue and was known to be untrue by the party making it; that it was made to induce the other party to act on it; and that he did so act on it to his injury. Miller v. Appleby, 183 Conn. 51, 54, 55; Paiva v. Vanech Heights Construction Co., 159 Conn. 512, 515. Fraud and misrepresentation can be accomplished in many ways and present issues of fact, the weight of which is decided by the trier. Miller v. Appleby, supra, 55. While a misrepresentation usually relates to an existing or past fact, a promise to do an act in the future, when coupled with a present intent not to fulfill the promise, is a false representation. Paiva v. Vanech Heights Construction Co., supra, 515. Where a defendant has special means of knowledge and a plaintiff can under the circumstances attribute to the defendant accurate knowledge of what is represented, a plaintiff need not show the actual knowledge of the falsity of the representation. J. Frederick Scholes Agency v. Mitchell, 191 Conn. 353, 358. Fraud does not require actual intent to deceive. "An innocent misrepresentation may be actionable if the declarant has the means of knowing, ought to know, or has the duty of knowing the truth." Richard v. A. Waldman Sons, Inc., 155 Conn. 343, 346. A misrepresentation is actionable where it is made knowingly, recklessly, negligently or innocently, for the purpose of inducing action upon it. J. Frederick Scholes Agency v. Mitchell, supra, 359. When the plaintiff's daughter told the plaintiff that if he conveyed the property to her and her brother that they would give him life use of the property, a fraudulent misrepresentation was made if she had no intention to do so. The misrepresentation is also actionable as a reckless misrepresentation if it was made to induce the plaintiff to convey his interest in the property and he relied upon the statement that he would have life use of the property if he did. Warman v. Delaney, 148 Conn. 469, 473. CT Page 1695 The defendants cannot retain the benefits of the deed induced by a material misrepresentation upon which the plaintiff relied. Richard v. A. Waldman Sons, Inc., supra, 347; Johnson v. Healy, 176 Conn. 97, 101, 102. It is well established that a mistake induced by an innocent but material misrepresentation justifies rescission. Duksa v. Middletown, 173 Conn. 124, 128. The fact that the plaintiff signed the deed after the misrepresentation does not prevent an action based upon a material misrepresentation in the inducement of the deed. Richard v. A. Waldman Sons, Inc., supra, 347, 348; Warman v. Delaney, supra, 474.
Ordinarily a plaintiff who makes a claim of fraud must prove it by a standard more exacting than a fair preponderance of the evidence. This standard has been stated as clear and satisfactory evidence or clear, precise and unequivocal evidence. J. Frederick Scholes Agency v. Mitchell, supra, 358; Alaimo v. Royer, 188 Conn. 36, 39. Constructive fraud may exist where there is a confidential relationship between the parties and property is transferred to a defendant upon a promise to deal with it in a certain way. Worobey v. Sibieth, 136 Conn. 352, 356. Where there is a fiduciary or confidential relationship between the parties, the law shifts the burden of proof to the defendant to prove by clear, convincing and unequivocal evidence that the defendant dealt fairly with the plaintiff. Dunham v. Dunham, 204 Conn. 303, 322, 323; Alaimo v. Royer, supra, 41; Worobey v. Sibieth, supra. In this case, there was evidence that the plaintiff relied upon his daughter to assist him in protecting his financial interests which became a matter of concern upon the death of his wife. The financial arrangements on both the bank account and the property were motivated by this concern on the part of the parties. The defendant, Lynda Maggi, undertook payment of the plaintiff's bills and proposed the transfer of the house. The court finds that there was a confidential relationship between the plaintiff and his daughter and that she acted on behalf of her brother, the codefendant, who also benefited from the transfer of the real estate.
The retention by the defendants of the plaintiff's one-half interest in the house without giving him the life use of it was a breach of the confidential relationship and a breach of a material representation, equivalent to constructive fraud. The defendant, Maggi, did not carry out her promise to give her father a life use of the property and he relied upon that representation in conveying it to the defendants. The conveyance was not a gift.
"The superior court in the exercise of its equitable CT Page 1696 jurisdiction may pass the title to real property by decree, without any act on the part of any party holding title to the real property, when in its judgment it is the proper mode to carry the decree into effect." Section 52-22 of the Connecticut General Statutes. Where there is a misrepresentation by a child to a parent as to the legal interest the parent would retain in the property, the court can set aside the conveyance under this statute. Bascetta v. Bascetta, 1 Conn. App. 256, 259. Even without the statute, the court exercising its equitable powers can order property reconveyed where the original conveyance resulted from a misrepresentation. Brett v. Cooney, 75 Conn. 338,341-343. Moreover, a material misrepresentation justifies rescission whether the defendant knew the representation was false when it was made or was entirely innocent of its falsity. Henry v. Kopf, 104 Conn. 73, 76; Duksa v. Middletown, supra, 128.
The complaint also requests compensatory and punitive damages, including attorney's fees. In most cases where rescission is granted, the plaintiff cannot also recover damages, at least where the effect of rescission is to place the parties where they were prior to the conveyance or execution of a contract. While in some cases damages incidental to rescission may be allowed, the plaintiff produced no evidence at the trial on any incidental damages including attorney's fees, so no damages are awarded.
Judgment may enter setting aside the conveyance to the defendants. It is ordered that the plaintiff has a one-half interest in the entire property, as tenant in common with the defendants, who acquired the other one-half interest from the estate of Linda A. Mitchell. Plaintiff's counsel shall prepare a suitable decree and submit it to the court.
ROBERT A. FULLER, JUDGE.