[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiffs, who are husband and wife, bring this four count amended CT Page 1091 complaint (dated December 7, 2001) against Norton Ryan, who is John Ryan's father, and Loretta Stankiewicz, who is Norton Ryan's companion. Ms. Stankiewicz and Norton Ryan have lived together since 1984.
The first count of the complaint seeks to enforce an oral contract to convey or devise certain real estate located at 185 Windsorville Road, East Windsor, Connecticut from Norton Ryan to John and Wendy Ryan.
The second count alleges fraud by misrepresentation of Norton Ryan as to ownership or title to the property. The plaintiffs allege that Norton Ryan had previously conveyed a one half interest in the property to Ms. Stankiewicz (in survivorship) and was, therefore, unable to convey or devise the property to the plaintiffs in accordance with his oral agreement to do so.
The third count is a claim for reimbursement for money loaned to the defendant, or spent by the plaintiffs on his behalf.
The fourth count is a claim that John Ryan is a third party beneficiary of an oral agreement between Norton Ryan and Margaret Keyser, who is Norton's ex wife and John's mother, that Norton would convey the property to John Ryan.
There is a second case which was ordered consolidated for trial with this case. In that second case, Docket No. 76867, entitled Norton Ryanand Loretta Stankiewicz v. John Ryan and Wendy Ryan the plaintiffs in that case (Norton and Ms. Stankiewicz) brought a summary process action against John and Wendy Ryan seeking their eviction for non payment of rent. That matter was transferred from the housing session for consolidation because of the issues over ownership.
 Applicable Law
In relevant part Connecticut General Statutes § 52-550 provides "no civil action may be maintained in the following cases unless the agreement, or a memorandum of the agreement, is made in writing and signed by the party . . . to be charged: (4) upon any agreement for the sale of real property or any interest in or concerning real property."
This defense may be raised under a simple denial to the allegations of the complaint pursuant to § 10-50 of the Practice Book.
It is, however, established case law that equitable principles would take the Statute of Frauds out of play where one party, in reliance on an oral contract, has partially or fully performed so that repudiation would amount to a fraud. Santoro v. Mack, 108 Conn. 690 (1929). This rule of CT Page 1092 law, however, pre-supposes that a contract existed between the parties and that the acts performed are of such a character that they can reasonably and naturally be accounted for in no other way than that they were performed in pursuance of a contract between the parties. Santorov. Mack, supra, p. 691; Andrews v. New Britain National Bank,113 Conn. 467, 474 (1931).
In this case, the question of whether or not there was an oral contract to convey or devise the property was hotly contested with conflicting testimony from both sides. The factual determinations to be made turns heavily upon the credibility of the witnesses which is, of course, a matter within the province of the trier of fact. The burden of proof is on the plaintiffs to establish their allegations. As discussed below they have not met that burden.
 Discussion of Findings
First Count: In the fall of 1997 John Ryan and his father, Norton Ryan had a conversation about John and Wendy moving into the subject property and in September of 1997, they did move onto the property where they have remained to this day. At the time John was having serious financial difficulty. He and Wendy had been building a house in Stafford but were unable to keep up the construction loan payments of approximately $1200 per month and had filed for bankruptcy protection (Chapter 13). Norton suggested they move back into his property in East Windsor. John testified that Norton told him he was crazy to be paying that high mortgage and that he should move back to East Windsor, and keep that property in repair since it was going to be his someday anyway. Norton and Ms. Stankiewicz testified they told John the rent would be $500 per month and denied telling John the property would be his. After moving back to East Windsor John and Wendy converted their Chapter 13 bankruptcy to a Chapter 7 and allowed their Stafford property to be foreclosed.
From 1997 John and Wendy did not pay any rent until May 2000, when they gave Norton a money order for $300 with the notation it was for rent, with deductions taken for a tire and furnace cleaning. It is significant that this payment was acknowledged to be a rent payment. When questioned as to why they took no action against John and Wendy before May 2001, the defendants testified they kept hoping things would work out for John (that he would get on his feet) and because he was Norton's son they forbore from taking action sooner. There was also evidence that John made some repairs to the property and it appears because of the familial relationship, the defendants extended patience to the plaintiffs on the rent issue, or at least accepted the work as partial or even full rental equivalent. CT Page 1093
There was also credible evidence that John was probably aware in 1991 that his father had conveyed a one half interest in the property to Loretta Stankiewicz (in survivorship) in that same year.
Since 1984, when Ms. Stankiewicz moved onto the property she paid a large lion's share of the costs of maintaining it, including taxes, insurance, mortgage, utilities and upkeep. By her estimate she put approximately $80000 into the property. Norton's income was limited primarily to social security income. Norton and Ms. Stankiewicz both testified that in 1991 when John learned that Norton had conveyed a half interest in the property to Ms. Stankiewicz, he became angry at both of them, to the point where he shoved her causing a shoulder injury and did not invite his father to his wedding to Wendy.
Neither the testimony of James Przybylski nor Thomas Dziedul is particularly credible on the issue of whether or not there was oral contract for the conveyance of real estate. About the best they could say (and that was vague) was that Norton had told them that he intended that John would get half of the property. They are friends of John and Norton denied that was his intention.
As to the claim that the plaintiffs' spent almost $12000 on improvements to the property pursuant to the alleged oral agreement, even accepting that to be true (and there is evidence that it is not, i.e., Ms. Stankiewicz testified that she paid for the greenhouse and that she and her son erected it), from September 1997 to September 2001 rent at $500 per month would have totaled $24,000. As found earlier the defendants went along with some work in lieu of rent because of the father-son relationship and their willingness to give the plaintiffs a chance to get back on their financial feet. The $12000 even if accepted as fully accurate is not a significant sum for four years of housing and has not substantially improved the property.
As to the first count, the court finds the plaintiffs have failed to prove an oral contract to convey or devise the property. Further, they have not proved performance on their part which would amount to a fraud if repudiated.
As to the first count, the Court finds in favor of the defendants.
Second Count: This count alleges that Norton Ryan misrepresented that he was the sole owner of the East Windsor property and had the ability to convey said property. In order to prevail in fraud and misrepresentation the burden is on the plaintiff to prove fraud by clear, convincing and unequivocal evidence. As found in connection with the first count, the credible evidence was that the plaintiff John was likely aware in 1991 CT Page 1094 that Norton had conveyed a one half interest in the property to Ms. Stankiewicz.
Clearly the plaintiffs have not met the higher burden of proving by clear and convincing evidence a fraudulent misrepresentation. The Court finds the issue in favor of the defendants in Count 2.
Third Count: The amended complaint alleges that John Ryan paid off $40000 in delinquent mortgages owned to Margaret Keyser who is Norton's ex-wife, and advanced $18956 to Norton or his creditors. These allegations were not briefed and are deemed abandoned (presumably because there was little or no evidence to support these allegations).
However, the parties offered testimony concerning a stamp collection that John claims his grandfather (Norton's father) gave to him. John claims this stamp collection was sold by Norton and the proceeds used by him to the loss of approximately $40000 and the attorney briefed this claim.
This claim does not stand scrutiny. The Court finds that the grandfather gave his two sons, Norton and Norton's brother each half of the collection. The gift was made in the late 1960's or early 1970's. It is illogical to think that the grandfather would give one son half of the stamps and give the other half to his approximately four year old grandson instead of treating his sons equally. Besides, there was no credible testimony as to actual value of the stamps. Norton testified he received little money for the stamps and used it for his own expenses.
In addition to the claim for the value of the stamp collection, Wendy and John Ryan testified they paid to Norton Ryan directly or paid expenses on his behalf in the amount of $4000.
This testimony was also disputed or contradicted by the defendants. Ms. Stankiewicz testified the $3000 was for repayment of a loan made to John and Wendy to farm a portion of the property (which they did for one year).
The issue of who paid for what is also clouded by testimony that Norton received an insurance check for a collapsed tobacco shed from which he cut a check to John for $40000 which was to be used as needed by Norton for living expenses.
While Wendy testified that the claimed $4000 did not come out of that account, her testimony must be questioned by the fact that she and John had just gone through a bankruptcy and, one may infer they were not well off financially. CT Page 1095
In short, this is again a question of credibility with the burden of proof on the plaintiffs. The Court does not find that burden has been met. But in any event, even adding that claimed $4000 to the $12000 allegedly spent on improving the property, that still falls far short of the $24000 in rent due Norton Ryan and Ms. Stankiewicz for the period of occupancy.
The plaintiffs have failed to prove the allegations of the third count and the Court finds the issues in favor of the defendants.
Fourth Count: In the fourth count the plaintiff John Ryan claims he is a third-party beneficiary of a contract between Margaret Keyser and Norton Ryan.
This claim is without merit. When Norton and Margaret divorced, Norton was awarded sole ownership of the property in question but he was ordered to pay Margaret $10000 secured by a note and mortgage on the property. When Norton failed to make the payment, Margaret commenced an action to foreclose on the property. Norton then borrowed the money, paid Margaret the $10000 and the foreclosure action was withdrawn. Margaret's testimony that she forbore foreclosing to avoid taking the property from her son (in 1984 long before he even claimed an interest in it), merits little comment. The decree of dissolution made Norton the sole owner and the foreclosure action was terminated because Margaret was paid.
The Court finds the fourth count in favor of the defendants.
In view of the foregoing judgment shall enter for the defendants in all counts.
 ___________________, J. Klaczak
CT Page 1096